# PRACTICE REPORTS.

## SUPREME COURT.

### DORLON agt. LEWIS.

On the trial of a cause, a *referee* takes the place of a *jury* as well as of the court. His decision upon questions of fact, like that of a jury, is, as a general rule, conclusive.

If, therefore, it appears that the report of a referee upon questions of fact has been, even in the slightest degree, affected by any influence exercised by the successful party, it will be set aside for irregularity. (*See Gale agt. Gwinits*, 4 *How. Pr. R.* 253, *to the same point.*)

A referee, when a cause is entrusted to him, should not only avoid all improper influences, but even "the appearance of evil." And whether satisfied with his decision or not, *no one* should be left to question its entire *fairness.*

*Albany Special Term, October,* 1851. Motion to set aside report of referee and subsequent proceedings for irregularity.

The action was brought to recover certain bills of costs, alleged to have been due from the defendant to the plaintiff, as the assignee thereof. Judgment having been perfected in the action, by default, an order was made, in September, 1849, upon the application of the defendant, so far opening the judgment as to allow the defendant to put in an answer setting up the payment of $50 by the defendant to the assignor, on the 5th of June, 1849, in settlement of the suit.

In pursuance of this order, an answer was put in, to which there was a reply by the plaintiff, and, subsequently, the issue thus joined was duly referred to a single referee, to hear and determine the same. After numerous hearings and the examination of a great number of witnesses, the referee, on the 16th of August, 1851, made a report in favor of the plaintiff,

Dorlon agt. Lewis.

upon which report, on the 7th of October following, judgment was perfected for $351,41.

It is stated in the affidavits upon which this motion was founded, that after the testimony had been closed, and the case finally submitted, the referee prepared a written opinion, in which he decided the question before him in favor of the defendant; and that he gave such opinion, or a copy thereof to the assignor of the demand, who was the plaintiff's attorney; that, upon receiving the opinion, he sought and obtained an interview with the referee, at which interview, the merits, evidence, and proceedings in this action were talked over and discussed; and that, by rearguing the case with the referee, and commenting upon the evidence, and repeating the *story* which he had himself told as a witness; and by representing that the impeachment of himself as a witness was the result of malice, and that by reporting against the plaintiff, the referee would find him guilty of perjury; and by asserting, and reasserting his honesty and good faith; and by force of pleading with and persuading the referee, he induced him to change his opinion, and make his report in favor of the plaintiff. It is also stated that the attorney, as a condition upon which the report should be made in his favor, pledged himself that no judgment should ever be entered upon the report, or other proceedings had thereon.

An affidavit of the referee was read in defence of the motion, in which he states, that the issue on the part of the plaintiff was mainly sustained by the testimony of the assignor; and that entertaining the opinion that a young man like him should avoid offering himself as a witness, under the circumstances in which he was placed in this cause, and while investigating it with a view to its decision, he did prepare an opinion adverse to the plaintiff and gave the same to the attorney, in the hope that, through the alarm it would create, he might be induced to resolve that he would not again offer himself as a witness for a party under such or similar circumstances, and that in this way a permanent amendment might be effected; that he had never, in fact, come to the conclusion to decide the cause in accord-

Dorlon agt. Lewis.

ance with that opinion, and never stated to the defendant's attorney, as was alleged, that he had come to that conclusion, but that he stated to the defendant's attorney why he had given the opinion to the plaintiff's attorney.

The referee further stated in his affidavit, that as there was much testimony on each side, and no small amount of conflicting testimony, and, as the cause had been prosecuted and defended at considerable expense, and the point at issue was of such a character as that he felt that he might do injustice to one of the parties by his decision, he had made some efforts to get the parties to a settlement, but could not succeed in effecting it; that on one occasion, when the attorney was in his office, he asked him what he would do with the report if he should receive it; and that he replied, in substance, that he only sought to have his character sustained and vindicated—that he cared nothing about the money, and, if he got a report, he should not file it or serve a copy on the opposing party, but that he would discharge the judgment and thus have the matter finally settled; that, when he subsequently gave him the report, it was not under a pledge that he would not proceed under it, but he did suppose that he would not proceed upon the report, and that he would cancel the judgment.

The attorney states in his affidavit that he took the opinion which the referee handed him, as a kind of *Pickwickian* review of the case, and not as a decision either way. When called upon by the defendant's counsel for the purpose of obtaining the opinion, or a copy of it, stated that the opinion was in the hands of a lawyer in Albany, and he promised to furnish a copy to the defendant's attorney: but it was never done.

W. C. BENTON, *for Motion*.
J. K. PORTER, *Opposed*.

HARRIS, Justice. A referee takes the place of a jury as well as of the court. His decision upon questions of fact, like that of a jury, is, as a general rule, conclusive. Whenever there is any, even the slightest reason to suspect that the verdict of a jury has been affected by any influence exercised by the suc-

Dorlon agt. Lewis.

cessful party, it is set aside.   Courts have always guarded with the most jealous watchfulness the right of litigants to have the unbiased judgment of the jury upon the evidence openly produced before them.   Whenever it has been seen that, by any means or influence beyond what has transpired upon the trial, and in the presence of the parties, the minds of the jury may have been operated upon with reference to their verdict, it has been deemed sufficient ground for granting a new trial.   See *Graham's Practice*, 313, 628, Gale agt. Gwinits, (4 *How.* 253,) and cases there cited.

The reasons which have led the court to be thus careful in preserving the integrity of the jury-box, apply, I think, with great, if not equal, force to the decisions of questions of fact by a referee.   Such decisions having the same legal effect as a verdict, the parties when they submit their rights to this kind of tribunal should feel that they have the same guarantee against any improper influence as they would have had, if the questions had been left to the decision of a jury.   An error of the referee upon a matter of fact, is not the less fatal to the rights of the party, because, besides acting in the place of a jury, he also decides questions of law.

In Gale agt. Gwinits, above cited, Mr. Justice PAIGE had this question before him, and came to the conclusion, although doubtingly, as he says, that the same rule ought to be applied to referees as to jurors.   It is a question of some importance, especially in the present state of the practice, where so large a proportion of the issues of fact joined in our courts are tried in this manner, and I have given it some reflection.   I have also taken the liberty of conferring with my brother PARKER on the subject, and we both concur in the views expressed by Mr. Justice PAIGE.   He held that where a referee, in the absence, and without the consent of the opposite party, received explanations from the witnesses of one of the parties, it was sufficient ground for setting aside the report.   If the same principle be applied to this case, the report cannot stand.

The referee admits, in his affidavit, that he had repeated conversations with the plaintiff's attorney in the absence of the

defendant's attorney, and so also with the defendant's attorney in the absence of the plaintiff's attorney, in relation to the questions pending before him; but he says that nothing in these conversations, to his knowledge or belief, had any effect upon his mind, or led him to any conclusions at which he would not have arrived had no such conversations been had. This I believe. The referee is a man of the most unquestionable uprightness. None sooner than he would have spurned an attempt improperly to influence his decision. And yet it cannot be denied, that, in a case like this, where the attorney had so deep an interest in the result,—where the case, on the part of the plaintiff, depended, as the referee himself says, upon the testimony of the attorney, and the decision was regarded as deeply affecting the character of the witness—it would have been far more prudent to have avoided all conversation with the parties, or their attorneys, on the subject, until the decision had been made. A referee, under such circumstances, owes it to himself, not only to avoid all improper influences, but even " the appearance of evil." Whether satisfied with the decision or not, no one should be left, for a moment, to question its *fairness*.

Again, it must be admitted that the referee stepped entirely aside from the line of his duty, when he allowed himself, before he had decided the case, to prepare an opinion adverse to the plaintiff, not for the purpose of deciding the case in accordance with such opinion, but, as he says, with a view to its effect upon the witness himself. The motive may have been creditable to the heart of the referee, but I think the mode of its execution was objectionable.

It is charged in the moving papers, that upon receiving the opinion of the referee, the plaintiff's attorney sought an interview with the referee and then persuaded him to change his opinion and make a report for the plaintiff. That he, in fact, had such an interview with the referee is not denied. Nor is it denied, that he endeavored to persuade the referee to make a report for the plaintiff, or that he presented the arguments and considerations set forth in the defendant's affidavit. All

Dorlon agt. Lewis.

that is denied is, that these arguments and considerations had the intended effect upon the mind of the referee. It seems, however, that the referee *did* inquire of the plaintiff's attorney what he would do with the report if he should obtain it, and that he replied that he only sought to sustain his own character, and, if he got a report, he would not use it, but would discharge the judgment. The referee says he did not give him the report upon any such pledge or agreement, yet he did suppose that the plaintiff's attorney would not proceed upon the report, and that he would cancel the judgment. It was an unusual inquiry for a referee to make, and the assurance given by the attorney was equally unusual. It may have had no influence upon the mind of the referee. He thinks it did not. Whether it did or not, perhaps the referee himself cannot be entirely sure. At any rate, in a case where, as the referee says, there was much testimony on either side, and a large amount of this was conflicting, such a consideration ought not to have been presented to the mind of the referee. It may have had its effect, without his being conscious of it. Such a thing is at least possible, and that upon the principle already stated is enough to justify the court in setting aside the report.

The motion must, therefore, be granted.

The order of reference, also, must be vacated, and a new trial had at the circuit. The costs upon the reference and the costs of this motion should abide the event of the suit.