JAMES C. ACHISON, PLAINTIFF IN ERROR, v. JONATHAN HUD-DLESON.

Under an act passed by the State of Maryland, and an assent given to it by Congress, no toll could be levied, for passing over the Cumberland Road, upon coaches which carried the United States mail.

In 1843, the Legislature of Maryland passed an act imposing a toll upon all passengers in mail-coaches, and if it were not paid, a toll of one dollar for each coach for every time that it passed over the road.

The toll upon passengers in mail-coaches was inconsistent with the compact made between Maryland and Congress, and therefore void.

And the toll per coach, of one dollar, is more properly a commutation of tolls than a penalty, and therefore void also.

THIS case was brought up from the Court of Appeals of Maryland, by a writ of error issued under the 25th section of the Judiciary Act.

It was originally a suit brought in the County Court of Alleghany County, in Maryland, by Jonathan Huddleson, superintendent of that part of the United States Road within the limits of the State of Maryland, against Stockton, Falls, Moore, and Achison, trading under the firm and style of Stockton, Falls & Co., who were the contractors for carrying the mail across the Alleghany Mountains.

The acts of Congress and of the States through which the Cumberland Road passes, were set forth in 3 How. 151, 720. A brief summary is all that is now required:

In 1832, the State of Maryland passed an act relative to the Cumberland Road, proposing to collect certain tolls upon it for the purpose of keeping it in repair. This act contained the following:

25 *

"And provided further, That no tolls shall be received or collected for the passage of any wagon or carriage laden with the property of the United States, or any cannon or military stores belonging to the United States, or to any of the States composing this Union."

The Congress of the United States, by an act approved July 3d, 1832, entitled "An act making appropriations for certain internal improvements for the year 1832," gave the assent of Congress to the provisions of the aforesaid act of the Legislature of Maryland, in the words following, to wit: 'And of an act of the General Assembly of the State of Maryland, entitled 'An act for the preservation and repair of that part of the United States road within the limits of the State of Maryland, passed the twenty-third day of January, one thousand eight hundred and thirty-two;' to which said acts the assent of the United States is hereby given, to remain in force during the pleasure of Congress."

It was admitted by agreement of counsel that Stockton, Falls &. Co., during the whole time for which the charge for the transit of stages upon the said United States road was made, were the carriers of the United States mails, in four-horse post-coaches, under a contract with the Postmaster-General of the United States, two articles of which looked to the transportation of passengers with the mail.

On the 10th March, 1843, the Legislature of Maryland passed an act, the first three sections of which were as follows:

"Sect. 1. Be it enacted, by the General Assembly of Maryland, that from and after the passage of this act there shall be demanded and received by the toll-collectors on that part of the United States road, within the limits of the State of Maryland, from the owner or owners of every passenger or mail-coach or stage passing the gates on said road, the sum of four cents for every passenger carried in the same, for every space of ten miles on said road, and so in proportion for every greater or less distance, which shall be taken and received in lieu of the tolls now established by law on all coaches or stages with four horses passing over said road, and which shall be collected, paid out, and expended as other tolls on said road are collected, paid out and expended, under existing laws.

"Sec. 2. And be [it] enacted, That it shall be the duty of the proprietor or proprietors, his, her, or their agent, to furnish under oath, on the first Monday of every month, to the gate-keeper at number one, a list, showing the number of passengers transported over said road in their respective coaches, for the month next preceding the time when said list is so returned.

"Sect. 3. And be it enacted, That in the event of said proprie-

tors or agents failing or refusing to comply with the provisions of the second section of this act, then and in that case it shall be the duty of the gate-keeper, at gate number one, to demand of and receive from, such proprietor or proprietors so failing, the sum of one dollar for each and every stage-coach passing over said road its entire length."

In the agreed statement of facts in the County Court, the counsel further agreed as follows:

" It is agreed that the stage-coaches, for which the sum of one dollar each is sought to be recovered in this action, were four-horse stage-coaches, used and employed by the defendants in the transportation of the United States mails, under the contract in that behalf before mentioned, and that the passengers for the failure of the defendants to furnish the lists of whom, under the act of Legislature of Maryland last above mentioned, the said sum of one dollar per stage-coach is charged and demanded in this action, were passengers transported in the said coaches, carrying the said United States mails as aforesaid.

It is further admitted, that the number of coaches in which the said mails were carried, were necessary for the said carriage of the said mails, and that there was no unfairness nor fraud, on the part of the defendants, in dividing the said mails so as to use a greater number of coaches for the carriage of said mails than were actually necessary for such purpose.

It is further admitted, that the defendants did carry passengers daily in the said four-horse coaches, and that the said defendants did not comply with the provisions of the second section of the act of the General Assembly of Maryland aforesaid, passed on the 10th day of March, 1843, as aforesaid, by returning a list on the first Monday of every month, or at any other time, showing the number of passengers thus transported over the said road in the said coaches. It is admitted that the said acts of Assembly of Maryland did not increase the tolls above a sum necessary to defray the expenses incident to the preservation and repair of said road.

If, upon this statement of facts, the court shall be of opinion that the plaintiff is entitled to recover, either upon the present declaration or upon an amended declaration, for the four cents per passenger for every ten miles, the judgment to be entered for the plaintiff for seven hundred and sixteen dollars. If the court shall be of opinion that the plaintiff is not entitled to recover in either case, then judgment to be given for the defendants; either party will be at liberty to appeal to the Court of Appeals, or sue out a writ of error."

Upon this statement of facts, the County Court gave judgment for the plaintiff, for the amount mentioned in the statement.

Achison, who was the representati *ve* of Stockton, Falls, & Co., carried the case to the Court of. Appeals of Maryland, where the judgment was affirmed, and he then brought it up to this court.

It was argued by *Mr. Price* and *Mr. Nelson,* for the plaintiff in error, and by *Mr. Frick* and *Mr. McKaig,* for the defendant in error.

The counsel for the plaintiff in error contended that the provisions of the act of Assembly of Maryland, of 1843, were in violation of the compact between that State and the United States, and referred to the cases in 3 How. 151, 720.

The counsel for the defendant in error insisted, that this case is clearly distinguishable from the cases of Searight *v.* Stokes et al. 3 How. 151; and Neil, Moore, & Co. *v.* The State of Ohio, Id. 720. That the act of Maryland, of the 10th March, 1843, is not liable to the objections which prevailed in the cases, in 3 Howard, referred to. That the provision of the act of 1843, on which this action is founded, embracing all passengers in four-horse coaches or stages, is not in violation of either the letter or the spirit of the compact between the State of Maryland and the United States, contained in the Maryland act, passed January 23d, 1832.

Mr. Justice CURTIS delivered the opinion of the court.

This action was brought by the defendant in error, as superintendent of that part of the National Road lying within the State of Maryland, to recover a sum of money from the plaintiff in error, as the owner of stage-coaches passing over that road, and conveying passengers and the mails of the United States. The Court of Appeals for the Western Shore of the State of Maryland having rendered a final judgment in favor of the plaintiff, the defendant brought the case here by a writ of error, under the twenty-fifth section of the Judiciary Act.

The nature and extent of the compact between the United States and the several States of Ohio, Virginia, Maryland, and Pennsylvania, touching the parts of the road lying within the limits of each of those States, having been much considered by this court in the cases of Searight *v.* Stokes, 3 How. 151, and Neil et al. *v.* The State of Ohio, Id. 720, it is only necessary to state some of the conclusions there arrived at, and apply them to the law of Maryland now in question.

In the second of those cases it was decided, that the State of Ohio could not change the tolls fixed by its act, which Congress assented to, so as to vary the relative position and privileges of mail-coaches, in regard to tolls, as prescribed by that act.

This decision is equally applicable to the original act of Maryland, to which Congress gave its assent; and the first inquiry is, whether the subsequent act of Maryland, now in question, will bear that test. The second section of the law of Maryland, to which Congress gave its assent, imposed, among other tolls, the following: " For every chariot, coach, coachee, stage, wagon, phæton, chaise, or other carriage, with two horses and four wheels, twelve cents; for either of the carriages last mentioned, with four horses, eighteen cents." And, inasmuch as coaches conveying the mail were not subject to any toll, there was by this law a discrimination in favor of mail-coaches, their proprietors bearing none of the burden of supporting the road, while the proprietors of other four-horse coaches did bear a part of that burden. On the 10th of March, 1843, the General Assembly of Maryland passed the act now under consideration, the material provisions of which are as follows:

"An act to amend the act entitled a supplement to an act entitled an act for the preservation and repair of that part of the United States road within the limits of the State of Maryland.

"Sec. 1. Be it enacted, by the General Assembly of Maryland, that from and after the passage of this act there shall be demanded and received by the toll-collectors on that part of the United States road, within the limits of the State of Maryland, from the owner or owners of every passenger or mail-coach or stage passing the gates on said road, the sum of four cents for every passenger carried in the same, for every space of ten miles on said road, and so in proportion for every greater or less distance, which shall be taken and received in lieu of the tolls now established by law on all coaches or stages with four horses passing over said road, and which shall be collected, paid out, and expended, as other tolls on said road are collected, paid out, and expended, under existing laws:

" Sec. 2. And be it enacted, That it shall be the duty of the proprietor, or proprietors, his, her, or their agent, to furnish under oath, on the first Monday of every month, to the gate-keeper at number one, a list showing the number of passengers transported over said road in their respective coaches, for the month next preceding the time when said list is so returned.

" Sec. 3. And be it enacted, That, in the event of said proprietors or agents failing or refusing to comply with the provisions of the second section of this act, then, and in that case, it shall be the duty of the gate-keeper, at gate number one, to demand of, and receive from, such proprietor or proprietors so failing, the sum of one dollar for each and every stage-coach passing over said road its entire length."

The discrimination which, under the original law, was made in favor of the proprietors of mail-coaches using the road, is not only destroyed by this law, but all toll is removed from the proprietors of other four-horse coaches, and a toll is imposed upon the proprietors of mail-coaches. It was held in both the former decisions, that the stipulation in the compact, that the United States should not thereafter be subject to any expense to maintain the road, was inconsistent with the imposition of a tax upon the contractors for carrying the mail in four-horse coaches, because the United States, requiring the mail to be so carried, would thus indirectly be made, through the enhancement of the price for this service, to bear a part of that burden. The effect of this law of Maryland is, therefore, to impose upon the United States, through the contractors for carrying the mail in four-horse coaches, a tax for the support of the road. It is argued that it is a tax upon the passengers, and not within the former decisions. But we do not so consider it. It is true, if he were to carry no passengers, and make the required returns of that fact, the proprietor would not be liable under this law to pay any toll. But the regulations of the Post-Office Department require him to take passengers for the security of the mail. If he carry the mail, he must also be a carrier of passengers; and this law would not have imposed a toll dependent upon the carriage of passengers in mail-coaches, unless it considered they would be carried. The real effect and meaning of the law is, therefore, to impose a tax on the proprietor of a four-horse coach which carries the mail, making the amount of that tax depend on the number of passengers carried. Now, the objection is not to the amount, but to the existence of the tax. Not having the power to impose any tax, it is no answer to say, its amount is regulated by the number of passengers.

This action is brought under the third section of the act to recover from the proprietor of mail-coaches the sum of one dollar for every mail stage-coach passing over the road. It is contended this is not a toll, but a penalty, for not complying with the directions contained in the second section of the act, to make returns. We think it more properly a commutation as to amount, for the tolls payable under the first section. It fixes their amount by operation of law, and without regard to the number of passengers carried; and is certainly subject to difficulties quite as great as would attend a demand for the tolls, under the first section.

Our opinion is, that, by reason of the compact between the United States and the State of Maryland, the tolls sued for could not be legally demanded, and that the decision of the Court of Appeals was erroneous and must be reversed.

Cooley *v.* Board of Wardens of Port of Philadelphia et al.

## *Order.*

This cause came on to be heard on the transcript of the record, from the Court of Appeals of the Western Shore of the State of Maryland, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Court of Appeals in this cause be, and the same is hereby, reversed, with costs; and that this cause be, and the same is hereby, remanded to the said Court of Appeals, in order that such further proceedings may be had therein, in conformity to the opinion of this court, as to law and justice may appertain.