NEW-YORK PRACTICE REPORTS.    **297**

Roosa agt. The Saugerties & Woodstock Turnpike Road Co.

# SUPREME COURT.

## SOLOMON ROOSA agt. THE SAUGERTIES & WOODSTOCK TURN-PIKE ROAD COMPANY.

The report of a referee (whose integrity was not questioned) was set aside, as against public policy, on these facts:—

Nearly two years before finally deciding the case, the referee received his fees from the defendants, assuring them that the decision was to be in their favor; afterwards, without informing the other party of what had occurred, he first promised him that he would suspend a decision until the determination by the court of another cause, (supposed to involve the same question,) and after such decision repeatedly assured him, and his attorneys, that the report should be made in his favor; and then again, as late as four or five days before the report was actually made, promised both parties that he would re-examine the case, which he did, and made a report in favor of the defendants.

It is important that the conduct of those to whom the pure and impartial administration of the law is entrusted, should be such as to furnish to those who litigate no just grounds of suspicion. (*See Dorlon* agt. *Lewis*, 9 *How. Pr.R.* 1.)

*Albany Special Term, July,* 1855.

MOTION to set aside report of referee.

The action was brought to recover a balance of account alleged to be due from the defendants to the plaintiff. It was tried before a referee. The case was finally submitted to the referee for decision on the 18th of May, 1853. On the 13th of July in the same year, the referee informed the agent of the defendants that he had made up his mind to decide the case in favor of the defendants, and was then paid $25 for his fees as referee, for which he gave a receipt.

On the 11th of June, 1855, the referee delivered to the defendants' attorney his report, to the effect that the plaintiff should be nonsuited. The grounds of the motion to set aside the report sufficiently appear in the opinion of the court.

E. COOKE, *for plaintiff.*
HENRY HOGEBOOM, *for defendants.*

HARRIS, Justice.   Although the referee had announced to the agent of the defendants his intention to decide the case against the plaintiff, and had received his fees, which he was only entitled to receive from the prevailing party, and from him only upon completing the discharge of his duty as referee; yet, according to the statement of the referee himself, he subsequently promised the plaintiff that he would not decide the case until a decision should be made by the general term of the supreme court in another cause which was supposed to involve similar questions.   It is evident, that when he made this promise he did not regard himself as having finally disposed of the case.

The referee further states, that about November, 1854, he was informed by the plaintiff that the decision of the supreme court, in the other case, had been made in his favor, and he then told the plaintiff that, if such was the case, he would decide this case in his favor also, and promised to make his report at an early day.

Mr. Bruyn, one of the plaintiff's attorneys, states, that some time in the fall of 1854, the referee volunteered to say to him, without being spoken to or inquired of on the subject, that he had made up his mind to give a report in this case in favor of the plaintiff, and had promised him that he would draw up a report for him.

Mr. Cooke, the other attorney for the plaintiff, states, that during the session of the circuit court, held at Kingston in November, 1854, the referee came to him, and voluntarily told him that he had examined the case, and had concluded to decide it in favor of the plaintiff, and that he would hand to him, or the plaintiff, the report before the opening of the court the next morning, adding, that he then had it partly made out, and would finish it that evening.

The referee does not deny having made these statements, but he alleges that he did so, relying upon what the plaintiff had told him in relation to the decision of the supreme court; that it was his intention, before making his report, to examine the decision in the other case, and, upon such examination, he found that, although the court had granted a new trial to the

plaintiff, it had not pronounced upon the validity of the plaintiff's claim.

The plaintiff further states, in his affidavit, that about the first of June, 1855, he again called the attention of the referee to the subject, and was then told that the agent of the defendants had been *at him* about the report, and that he would decide it soon. The referee states, upon this point, that some four or five days before he made the report, both the plaintiff and the defendants' agent called on him, and inquired about the report; that he stated to them why it had not been made before, and then again promised to *re-examine* and decide the case that week; that he did accordingly re-examine the case, and on the Monday following made his report, and delivered it to the defendants' attorney.

Upon a state of facts like this, I feel constrained to set aside the report. In doing so, I am gratified to be able to say that the grounds upon which I put the decision do not, in any respect compromise the integrity of the referee. There is nothing in the case, even as it is made by the papers in support of the motion, which would justify the conclusion that the referee had, in the least degree, intended to swerve from an honest discharge of duty. But, as in the case of *Dorlon* agt. *Lewis*, (9 *How.* 1,) where the referee was a man whose integrity was above all suspicion, the report was set aside upon considerations of public policy, so here, while I see nothing in the facts which leads one to doubt that the referee intended, from the first, to do what he believed to be right in the case, yet the kindness of his temper and the simplicity of purpose, by which he has been actuated, have led him to a course of indecision and vacillation tending very greatly to impair the respect to which his decision would otherwise have been entitled. The fact, that nearly two years before finally deciding the case, he should have received his fees from one of the parties, assuring him that the decision was to be in his favor, and that afterwards, without informing the other party of what had occurred, he should first promise him that he would suspend a decision until the determination of another cause, and then should assure him, and his attorneys,

again and again, that the report should be made in his favor; and then, again, as late as four or five days before the report was actually made, that the referee should promise both parties, as well the party to whom he had two years before declared that his mind was made up, and from whom he had actually received his fees, as the party to whom, and to whose attorneys, he had repeatedly promised a report, that he would re-examine the case, is more than I am willing to sanction. Conceding that no injustice has been done—and whether there has or not, this is not the time to inquire—it is far better that the parties should be subjected to the expense of a re-trial before another referee, than that such a precedent should be left to exert its influence in the decision of similar cases which may arise here-after.

All agree that the administration of the law must be pure and impartial. But it is scarcely less important that the conduct of those to whom its administration is entrusted should be such as to furnish to those who litigate no just grounds of suspicion.

I think the motion to set aside the report should be granted, but without costs.