THE BOSTON & PROVIDENCE DISPATCH EXPRESS Co. v. THE
METROPOLITAN STREET RAILWAY Co.

(New York Common Pleas — General Term, December, 1895.)

In considering an appeal from a District Court, the Common Pleas is not
concluded by the absence of a motion to dismiss the complaint at the
close of the testimony.

MOTION for reargument of appeal from the District Court
for the first judicial district.

*Morris W. Hart*, for motion.

*Henry A. Robinson*, opposed.

*Per Curiam.* No ground is presented upon this motion
for which, within the provisions of rule 16 of the General
Term of this court, a reargument of the appeal may be had.
The position of the witness Miller when he saw the accident,
the opinion of Officer Lake as to the manner in which the
plaintiff's driver was driving, the testimony of the driver that
he looked up and down the track and the fact that part of the
wagon was upon the outer rail at the time of the collision are
not decisive of the case. In considering the appeal from a
District Court we are not concluded by the absence of a
motion to dismiss the complaint at the close of the testimony.

Motion denied, with ten dollars costs.

Present: DALY, Ch. J., BISCHOFF and PRYOR, JJ.
Motion denied, with ten dollars costs.

----

WILLIAM J. REYNOLDS, Respondent, v. JOSEPH MOORE,
Impleaded, Appellant.

(New York Common Pleas — General Term, December, 1895.)

As to whether a change of decision by a referee after an informal expres-
sion of opinion to counsel of one of the parties and a refusal by the lat-
ter to pay all of the stenographer's fees is sufficient to require his report
to be set aside, where the charges of undue influence and improper con-
duct are denied by him, *quære*.

New York Common Pleas, December, 1895.      [Vol. 14.

APPEAL from an order made at Special Term denying a motion to set aside the report of a referee for his misconduct.

*Alexander Thain,* for appellant.

*James Kearney,* for respondent.

BISCHOFF, J.   Where the fact of the operation of undue influence upon a referee is actually proven the courts have never hesitated to set aside the report on motion, and this irrespective of the degree of the influence and its probable weight with the referee when rendering his decision.  But the charges must be established by affirmative proof, and no rule of policy renders a mere opening for surmise or suspicion of their truth sufficient to rebut the presumption of rightful action upon the official's part.   The reconsideration by him of an opinion informally expressed to counsel has little, if any, weight in the matter.   *Gray* v. *Fisk,* 12 Abb. Pr. (N. S.) 213; *Ayrault* v. *Sackett,* 17 How. 507.

In this case the charge made was met by the oaths of opposing affiants, and a conflict of evidence as to the fact resulted.

Apart from the evidence for the respondent, offered in the form of affidavits, uncontradicted testimony was given in open court in absolute disproof of the claim that the referee had any pecuniary interest in the stenographer's fees, which alleged interest formed the basis of the charge made, and since the learned judge below, having the witness before him, was impressed with the truth of this evidence, we are not to hold that the contrary was to be taken as proven merely upon the controverted allegations of the opposing affidavits showing circumstances which might be viewed either as supporting a suspicion of irregular action or the reverse.

The whole question was one of fact, and the result arrived at in the original tribunal, that the moving party's position was not sustained by proof, should remain undisturbed.

Order affirmed, with ten dollars costs and printing disbursements.

PRYOR, J.    The learned judge at Special Term refused to set aside the report of the referee for insufficient evidence of "the charge of corruption and malfeasance."    I do not understand that, by the law of New York, proof of a mercenary or improper motive in his decision is requisite to invalidate a referee's report.

In *Stebbins* v. *Brown*, 65 Barb. 272, while a case was pending before a referee he accepted a retainer in a cause from the plaintiff.    Held, that on this ground alone the report should be set aside, that court saying that " we do not deem it important to inquire whether the decision of the referee was or was not affected favorably to the plaintiff by his retainer. * * * The rule should be inflexible that such a fact will, *ipso facto*, avoid the report of a referee.   No other rule will protect the referee from the approach of temptation or shield the administration of justice from the suspicion of impurity."

In *Yale* v. *Gwinits*, 4 How. Pr. 253, where a referee during an adjournment personally examined a piece of machinery, the utility of which was the subject of the litigation, and received explanation of its operation by two of plaintiff's witnesses without the knowledge or consent of the defendant, a report in favor of the plaintiff was set aside, the court saying that " a referee ought not to place himself in a situation which may expose him to be influenced in his decision by conversations with third persons in the absence of the parties."

In *Dorlon* v. *Lewis*, 9 How. Pr. 1, speaking of private conversations of a referee with the attorney of a party, the court said : " A referee, under such circumstances, owes it to himself not only to avoid all improper influences, but even ' the appearance of evil.'   Whether satisfied with the decision or not, no one should be left for a moment to question its fairness."

In *Roosa* v. *Saugerties, etc., Company*, 12 How. 297, "although nothing in the case would justify the conclusion that the referee had, in the least degree, intended to swerve from an honest discharge of his duty," his report was set aside, the court saying: " All agree that the administration of the law must be pure and impartial.   But it is scarcely less

important that the conduct of those to whom its administration is intrusted should be such as to furnish to those who litigate no just grounds of suspicion."

In *Carroll* v. *Lufkins,* 29 Hun, 17, the court said that "whether or not the referee had been influenced or was likely to be influenced" by the fact alleged against him "is immaterial. He may be affected by it unconsciously, and the rule suggested should prevail, if for no other reason than to protect referees from temptation and the suspicion of having been influenced by improper motives."

In *Greenwood* v. *Marvin,* 29 Hun, 99, in affirming an order setting aside the report of a referee, the court said : " Referees ought, like jurors, to be vigilant to avoid evil ; to avoid taking a line of conduct which may affect their freedom of mind and neutrality in cases under consideration. *Ex parte* treaties and conversations with either party as to any fact, point or fee ought to be avoided."

In *Burrows* v. *Dickinson,* 35 Hun, 492, in setting aside the report of a referee, the court at General Term said : " Even the appearance of improper influence and bias must be avoided. If it is not, the confidence of the public in this mode of trial will be utterly subverted and destroyed, and injustice will likewise be promoted through the neglect if not by means of the direct countenance and approval of the courts themselves. That is only to be prevented by vindicating the right of the parties to an impartial and independent trial."

In *Livermore* v. *Bainbridge,* 14 Abb. (N. S.) 227, the report of the referee, " a gentleman of high standing and character," was set aside, because he had advised the party against whom he was about to decide to a compromise ; and this although his suggestion and its rejection by the unsuccessful party had no influence upon his mind, the court, per DAVIS, J., saying : " We think it improbable that the referee in this case was affected by the mistake he made ; but the interests of justice demand that the general rules designed to prevent the suspicion of impurity in its administration should be rigidly adhered to."

In *Leonard* v. *Mulry*, 93 N. Y. 392, although there was "no evidence that in reaching a conclusion in favor of the plaintiff there was either interest or improper conduct on the part of the referee," the Court of Appeals says: "Nor was it necessary to inquire whether the referee would be influenced by the new relation which he sustained to the case. He might be affected by it unconsciously; and the rule of exclusion has regard, not so much to the motives which in any given case may be supposed to bias the judge, as to the apprehensions or even over-anxious suspicions of litigants and the preservation of confidence in the administration of justice."

These authorities I adduce, not as adjudications upon the facts of this case, but as propounding the rule that should be observed in its determination.

What are the conceded facts of the case — admitted, I mean, by the referee? That, at a private interview which he solicited, he said to defendant's counsel that he thought he would have decide in defendant's favor, and he was then writing an opinion in the case; that he suggested the subject of stenographer's fees, and thereupon a dispute arose between the referee and the counsel as to which party should pay them, the referee contending that by stipulation the successful party should pay the whole fees, while defendant's counsel insisted that he should pay only half; that the referee said the successful party would have to pay the referee's fees and the stenographer's, and that the stenographer looked to him, the referee, for payment of his fees; that defendant's counsel stubbornly declined to pay more than half of the stenographer's fees; that this stenographer had been substituted by the referee instead of one already engaged by the parties; that, in the end, the referee gave his report to the plaintiff, who paid him all the fees of the stenographer.

Assuming, as the referee alleges, that his change of opinion in the case was the effect of a subsequent brief from the plaintiff's attorney, and nowise influenced by the refusal of defendant's counsel to yield to his demand for payment of all the stenographer's fees, is the principle enunciated by the

authorities any the less applicable ?  Is not the administration of justice in the case exposed to grave and well-founded suspicion ?  Is the defeated party without appearance of justification in the belief he avows, that he has not had a fair and impartial trial ?  Do not the interests of justice entitle him to a hearing before a tribunal whose decision shall not be challenged by circumstances of such sinister import as infect the report of this referee ?  If the plaintiff has a valid cause he can lose nothing by recourse to another court of unquestioned and unquestionable impartiality.  If the defendant's case be infirm, the clearer the integrity of the judge who determines it the less reason to apprehend its prevalence.  Independently, however, of the interest of parties, the public is profoundly concerned that the distribution of justice by its courts should be exempt even from the suspicion of illicit influence.

I am for reversing the order and setting aside the report.

Reargument ordered upon failure of concurrence.  Code Civ. Proc. § 281.