FORTUNATO v. MAYOR, ETC., OF CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. June 28, 1898.)

1. ACTION BY ADMINISTRATOR—PARTY IN INTEREST.
   In an action by an administrator to enforce a claim against a city, the plaintiff has a material interest in the award of the claim, although the money realized would be paid to the creditors of the estate rather than to the next of kin, for his duty is to collect the assets for the benefit of the creditors as well as of the next of kin.

2. REFEREE—COMPETENCY.
   The fact that an attorney is retained as special-counsel to represent a city in litigation renders it improper for him to act as referee in another action to enforce a claim against the city, in the absence of express notice of his relationship to the city to all the counsel who joined in the consent to his appointment as referee.

3. SAME—ATTORNEY OF PARTY INTERESTED.
   Where an attorney who accepts the position of referee has such relation with one of the parties to the litigation as to make it improper that he should decide the question submitted to him, the fact that he is a man of high character is immaterial.

4. SAME—RETAINER.
> So, also, the fact that he received a retainer from one of the parties prior
> to the time when he was appointed referee, instead of after his appoint-
> ment, is immaterial.

Appeal from special term, New York county.

Action by Maicho Fortunato against the mayor, aldermen, and commonalty of the city of New York and others. From an order denying a motion refusing to set aside the report of. a referee, and vacating and annulling the order appointing the referee, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

C. J. G. Hall, for appellant.
Theodore Connoly, for respondent city of New York.
Robert E. Deyo, for respondents executors of Patten.

INGRAHAM, J. This action having been once tried, and the judgment having been reversed by the court of appeals (41 N. E. 572) on the 27th of February, an order was entered, upon the consent of all the parties to the action, including that of the appellant, referring certain issues in the action to a referee to hear and determine the same. The issues thus referred related to the claim made by the defendant the administrator of Dawson against the city of New York to recover the sum of $5,840, and further issues between the defendants Patten, as executors, and the Twelfth Ward Bank, arising out of an assignment made by Dawson to these two parties, concerning which a new trial had been ordered by the court of appeals. It seems that the question as to the right of the Dawson estate to recover from the city this sum of $5,840 had been on the former trial decided in favor of the Dawson estate, but the report had been set aside so far as to allow a rehearing upon that claim; such rehearing to take place before the former referee who tried the issues in the action. That referee having died, and a new trial having been ordered in the dispute between the Patten estate and the Twelfth Ward Bank, these two questions were referred to a referee by this order. The reference proceeded down to the 27th of September, 1897, when the referee reported in favor of the Patten estate as against the Twelfth Ward Bank, and further reported that the defendant Dawson was not entitled to recover any sum for the extra work for which the claim of $5,840 was made; and judgment based thereon, dismissing the claim on its merits, was entered. After this judgment had been entered it came to the knowledge of the appellant that at the time of the entry of this order of reference, and through all the period that the case was on trial before the referee, the referee was acting as counsel for the city of New York in several important litigations pending in court or before commissions; and that the referee had been paid by the city of New York, for services rendered by him to the city under special retainers, which continued during the period of the trial of this action before him, a sum exceeding $25,000. The attorney for the Dawson estate, against whom the referee decided this question, first become aware of the

fact that the referee was counsel for the city, and had received from it large sums as compensation for services rendered to the city, after the trial had ended and the judgment had been entered; and he thereupon made a motion to set aside the judgment and the report of the referee and the order of reference, and it is from an order denying that motion (50 N. Y. Supp. 429) that this appeal is taken.

Before considering the merits of this application, it is well to call attention to the claim made that this moving party has no interest in this litigation, as any amount awarded to her would, under the various assignments made by the appellant's intestate, be paid to his creditors, who are parties to the action. The appellant, as administratrix of Dawson, however, in this action directly represents the Dawson estate and the creditors of that estate. The duty of the administratrix was to collect the assets of the estate for the benefit of the creditors as well as for the benefit of the next of kin. Such administratrix was a necessary party to an action to determine the amount of the fund that is due to the estate and to whom that fund should be paid. We think that this administratrix, appellant, has a material interest in the award of this claim of the estate against the city, although the money realized by the estate would be paid to the creditors of the estate rather than to the next of kin.

It is further claimed by the respondents that the relation of the referee to the city was well known, and that the fact that he had been in the habit of acting as counsel for the city must have been known to the respective parties or their attorneys, when they consented to his appointment. The affidavit of the attorney for the appellant states that he had no such knowledge that the relationship of attorney and client existed between the referee and the city at any time until after the entry of the judgment in this action and until this application was made. There is nothing to impeach the truth of that statement, and we should not be justified in considering it untrue. In the determination of questions of this kind, public policy intervenes; and, while I suppose there would be no objection to two parties submitting their differences to the attorney of one of the parties for decision, if there was clear proof that the relation of the referee to one of the parties was fully understood at the time that his consent was obtained, it would not do for a party attempting to enforce a judgment of his own counsel or attorney, in his favor, to say that when such attorney or counsel was appointed the other party in interest should have known of the relation that existed between them. Before such an appointment could be upheld, it must clearly appear that the relation that existed between the referee and one of the parties was communicated to the other party, and was fully appreciated and understood by him. In this case there is the express statement of the attorney for the appellant, made under oath, and not impeached, that he had no knowledge or suspicion of the existence of the relation stated.

We thus come down to the main question, whether or not the relation existing between the referee and the city of New York, by reason of the fact that at the time the referee was appointed to hear and determine this action he was in the employ of the city as its

counsel, and was conducting important litigation for it, and continued performing such services and receiving large sums of money as compensation for them during the time that the action was on trial before him as referee, was consistent with the position of referee to hear and determine a claim against the city. If the city of New York was a private litigant,—a manufacturing or railroad corporation,—and the person having a claim against such a corporation had, in ignorance of the fact, consented to the appointment of the attorney or counsel for the corporation to act as referee to determine the validity and the extent of his claim, I apprehend that no court would for a moment hesitate to set aside any report that was made and vacate the order of reference; and that, irrespective of any consideration of actual influence exerted by the parties upon its own attorney or counsel in the litigation. The sole fact of the relation that existed between one party to the action and the referee would make it improper for the referee to occupy the position, as judge, to determine the question of the claim against his client, from whom he was receiving compensation for services rendered. The courts have again and again stated that the question upon applications of this character was not whether the attorney had been improperly influenced, or whether his conduct had been such as to show prejudice or partiality, but whether, from the relationship of the parties or the acts of the referee, it was possible that such influence had been exercised, or whether on account of such relationship, or for some other reason, the fairness of his decision could be justly questioned. This question was lately before this court in the case of Reynolds v. Moore, 1 App. Div. 105, 37 N. Y. Supp. 72, where Mr. Justice Barrett in delivering the opinion of the court, says: "The real question here was not whether the referee was guilty of actual corruption, but whether the fairness of his decision was justly questioned. It is the settled law of this state that any indiscretion of a referee, from which improper inferences can be drawn, suffices to set aside his report." And the learned justice quotes the remarks of Judge Harris in the case of Roosa v. Road Co., 12 How. Prac. 297: "All agree that the administration of the law must be pure and impartial. But it is scarcely less important that the conduct of those to whom its administration is intrusted should be such as to furnish to those who litigate no just grounds of suspicion;" and the remarks of Davis, J., in Livermore v. Bainbridge, 14 Abb. Prac. (N. S.) 227: "The interests of justice demand that the general rules designed to prevent the suspicion of impurity in its administration should be adhered to." In the cases cited, as in this case, the integrity of the referee was not questioned. We can say of the referee in this case as was said by Harris, J., in Dorlon v. Lewis, 9 How. Prac. 1: "The referee is a man of the most unquestionable uprightness. None sooner than he would have spurned an attempt improperly to influence his decision. * * * A referee, under such circumstances, owes it to himself, not only to avoid all improper influences, but even the appearance of evil. Whether satisfied with the decision or not, no one should be left, for a moment, to question its fairness." The question, however, that we are to determine, is, not whether this relation that existed between this referee

and the city had influenced his decision, but whether it was such a relation as, under the circumstances, would justify a person in questioning the fairness of the decision. It seems to me clear that the relation existing between the referee and this defendant was such that the fairness of his decision upon the questions submitted to him might justly be questioned by a party to the litigation. The fact that the referee is a man of high character and unquestioned integrity should not be allowed tö influence the determination of that question; for it is essential to the administration of justice that even the appearance of evil should be avoided, and, where a man who accepts the position of referee has such relations with one of the parties to the litigation as to make it improper that he should decide the questions submitted to him, his character is not at all material, and the court will enforce that rule against a man of high character as well as against one whose character is not so good. Would the court be justified, upon such an application, in making a distinction between the character of one referee and another, and sustaining the report in one case and refusing to sustain it in another? What we have to determine is whether the relationship as it existed between the referee and the city when the order of reference was entered, and as it continued during the time that the action was before him for trial, was inconsistent with his acting as referee to determine the action. Upon this question, the fact that the referee received the retainer from one of the parties prior to the time that he was appointed, instead of after his appointment, seems to me to be immaterial. Stebbins v. Brown, 65 Barb: 272, was a case where, after the referee had been appointed, the plaintiff employed him to prosecute and collect demands against other parties. The court referred to the fact of the referee not having been counsel for the plaintiff prior to the time of his appointment as referee, and said:

"The court does not deem it important to inquire whether the decision of the referee was or was not affected favorably to the plaintiff by his retainer in the matters above mentioned, for we regard such an inquiry as immaterial. We deem it our duty to place our decision upon the unquestioned fact that, while the referee was acting on the trial of this action as an officer of the court, he accepted the retainer of the plaintiff, and became, in respect to other matters, his attorney and counsel. The rule should be inflexible that such a fact will, ipso facto, avoid the report of the referee. No other rule will protect the referee from the approach of temptation, or shield the administration of justice from the suspicion of impurity."

Eliminating the question of the actual effect upon the referee by the retainer, it seems to me that the rule as it exists prohibits the appointment as referee of one who is actually the professional adviser of one of the parties, as it prohibits his continuance as referee after his retainer by one of the parties when he was so retained after his appointment as referee. Nor do I think that the fact that the referee's client was a municipal corporation takes this action out of the general rule before referred to. From the referee's affidavit, it appears that for 20 years he has been engaged in many legal proceedings in which the city was a party, and during such period he has been frequently retained as special counsel for the city; that he has been so retained by every corporation counsel during said period; that.

there has hardly, if ever, been a time in that 20 years that the deponent has not been a counsel for the city in some pending proceeding; that at the time the reference herein was being heard by the deponent he was acting as counsel and attorney against the city in several proceedings and actions to which it was a party; and that the deponent has during such period been counsel for the city in many large and important matters, which have attracted the attention of the public and have been reported in the public press.    Thus he emphasizes the close relations that herein existed between himself and his client, the city.    For 20 years he has been constantly employed as its counsel in various proceedings, and it seems to me that such a relation is inconsistent with the position of referee to hear and determine a claim against the client.    There is undoubtedly a distinction between a public corporation, such as the city of New York, and a private corporation or individual, where the success or failure of the counsel to succeed in the litigation would have a pecuniary effect upon the client.    But we are now considering a general rule.    The policy of the law has been to prevent judicial officers and juries from acting in cases where there is such a degree of relationship or interest which could directly or indirectly affect their impartiality.    The careful provisions of the Code in relation to judges and other judicial officers show how the legislature has endeavored to prevent even the suspicion of unfairness; and it certainly would be a great breach of propriety for a judge to take part in the decision of a case in which a valued client, from whom he was receiving large fees for services rendered, was an interested party. Solely upon the ground, therefore, that the relationship that existed between the referee and the city of New York was such that it was improper for him to act as referee in this case, in the absence of express notice of such relationship to all the counsel who joined in the consent to his appointment as referee, we think it is our duty to set aside the report, and direct the case to be tried before a new referee.

The order appealed from must therefore be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs.    All concur.