### FLECK v. COHN et al.

(Supreme Court, Appellate Division, Second Department. March 19, 1909.)

1. EVIDENCE (§ 77*)—PRESUMPTIONS—FAILURE TO CALL WITNESS.
    There can be no presumption in favor of a plaintiff, because defendant failed to call a material witness who was present in court, where, on the plaintiff subsequently calling such witness, defendant made him his witness.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 97; Dec. Dig. § 77.*]

2. REFERENCE (§ 41*)—DISQUALIFICATION OF REFEREE—WAIVER.
    Any question as to the disqualification of a referee, because he had acted as clerk for defendant's attorney, is waived, where plaintiff, with knowledge of the facts, spoke to the referee about it, and at the same time disclaimed any intention of questioning his integrity or of objecting to his hearing the evidence.
    [Ed. Note.—For other cases, see Reference, Cent. Dig. § 67; Dec. Dig. § 41.*]

Appeal from Kings County Court.

Action by Barbara C. Fleck against Casper Cohn and others. From an order confirming the report of a referee, defendant Millie Cohn appeals. Affirmed.

Argued before WOODWARD, JENKS, GAYNOR, RICH, and BURR, JJ.

Wm. D. Sporborg (Max Winkler and Harold S. Fleischer, on the brief), for appellant.

Jacob Brenner, for respondent Casper Cohn.

WOODWARD, J. The question presented to the referee in this case was what portion of the surplus moneys should be set aside for the purpose of securing the inchoate right of dower of the appellant, Millie Cohn. There was evidence which warranted the referee in finding that Casper Cohn and David Cohn entered into a contract for the purchase of the property in question prior to the intermarriage of David Cohn and Millie Freedman Cohn, and that the purchase price,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

aside from the assuming of mortgages and the giving of a purchase-money mortgage, was $3,000, of which Casper Cohn contributed $2,-500 and David Cohn $500, with an understanding that, if David Cohn repaid to Casper Cohn the sum of $1,000, the former should have a one-half interest in the property, otherwise his interest to be one-sixth, and that David Cohn never contributed anything further toward the purchase of the property.

David Cohn and his wife were living apart at the time this controversy arose, and the deeds, mortgages, etc., showing no facts as to the proportionate ownership of the premises, the claimant, Millie Cohn, urges that the presumption prevails of equal ownership, and that the evidence which she produces, in harmony with this presumption, is such as to outweigh that of the respondents. Aside from the presumption, all of the testimony offered by the appellant was of alleged conversations and admissions of equal ownership at about the time the contract was made, and of facts tending to support an inference that David Cohn actually paid $1,500 of the purchase price. The evidence of Casper and of David Cohn was direct and positive as to the transaction, while the testimony in opposition was not of the highest probative character, even assuming the witnesses to have been disinterested and honest in their intentions, and we are of the opinion that the weight of evidence is not so preponderating as to justify a reversal of the order.

The suggestion that the referee erred in not taking judicial notice of the presence of David Cohn in court, and the fact that he was not called by Casper Cohn, is of no merit. Casper Cohn had himself testified, and as the case stood he was not contradicted. He was not bound to produce more evidence. But the appellant subsequently called David Cohn, and then the respondent made him his witness, so that there could be no possible presumption arising from an original failure to call him on the part of Casper Cohn.

But it is here urged that the referee had, at some time prior to the hearing in this proceeding, acted as clerk of the attorney who appeared for Casper Cohn, and that it was improper for him to act as referee because of this fact. It appears, however, that this fact was called to the attention of the appellant's counsel, and that the latter mentioned it to the referee, at the same time disclaiming any intention of questioning his integrity or of objecting to his hearing the evidence. It is doubtful if the referee was disqualified under any reasonable construction of rule 79 of the general rules of practice. But, if he was, the rule is well settled that:

"A party may waive a rule of law or a statute, or even a constitutional provision enacted for his benefit or protection, where it is exclusively a matter of private right, and no considerations of public policy or morals are involved; and, having once done so, he cannot subsequently invoke its protection." Sentenis v. Ladew, 140 N. Y. 463, 466, 35 N. E. 650, 37 Am. St. Rep. 569.

While it is true, of course, that considerations of public policy forbid the appointment of a "referee who is the partner or clerk of the attorney, or counsel, of the party in whose behalf such application for such appointment is made, or who is in any way connected in business with such attorney or counsel, or who occupies the same office

654        115 NEW YORK SUPPLEMENT.        (Sup. Ct.

with such attorney or counsel" (rule 79), where these facts are fully
known to the parties or their counsel, and the appointment is made and
the trial or hearing proceeds without objection, we see no reason for
holding that the determination should be set aside, and Fortunato v.
Mayor, 31 App. Div. 271, 273, 52 N. Y. Supp. 872, clearly intimates
that this would be the rule. But in the present case it does not ap-
pear that the referee was a clerk in the office of the respondent's at-
torney. He had been such clerk at a time prior to such appointment;
but this fact was called to the attention of the appellant's counsel,
and he refused to make any objection, and it is not now suggested that
there was any lack of integrity on the part of the referee. We are
clearly of the opinion that the rule invoked by the appellant has no
bearing here, and that the appeal is not well taken.

The order appealed from should be affirmed.

Order of the County Court of Kings county affirmed, with $10 costs and
disbursements. All concur.