PEOPLE v. SMITH.

(Supreme Court, Appellate Division, First Department. May 25, 1906.)

1. CRIMINAL LAW—TRIAL—ARGUMENT OF COUNSEL.

    In a prosecution for assault with intent to murder, it was claimed that defendant shot the complaining witness after a quarrel in defendant's saloon. In his opening address the prosecuting attorney stated that the prosecuting witness had been a witness on the trial of a drunken policeman for killing another person in the street after a quarrel in defendant's saloon. It was the theory of the attorney that this evidence tended to disclose the disorderly character of defendant's saloon, and furnished the motive which induced defendant to attack the prosecuting witness. *Held*, that permitting this argument was not ground for a new trial.

    [Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, § 1663.]

2. WITNESSES—IMPEACHING OWN WITNESS.

    In a prosecution for assault with intent to kill, the prosecuting witness, when called by the state, merely testified that he was shot. On cross-examination he was asked if he knew who had shot him, and said that it was not the defendant. The court asked him why he had not testified as to who shot him, and he said that he did not know positively. *Held*, that it was not error to allow the state on redirect examination to ask the witness if he had not told a certain person that defendant shot him.

    [Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Witnesses, §§ 1098, 1217, 1270.]

3. CRIMINAL LAW—FAILURE TO CALL EYEWITNESS—INFERENCE.

    Where, in a prosecution for assault with intent to kill, a witness who was present at the time of the shooting was not called, either by the prosecution or the defense, though she was in the courtroom, defendant was not entitled to a charge that the failure of the state to call the witness might be taken as tending to show that her testimony would be adverse to the prosecution, but was only entitled to an instruction that the jury could consider the failure of the state to call the witness.

    [Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, § 1855.]

Appeal from Court of General Sessions, New York County.

William H. Smith was convicted of assault in the second degree, and appeals. Affirmed.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

Lewis S. Chanler, for appellant.

Robert S. Johnstone, for respondent.

PATTERSON, J.   The defendant was tried in the Court of General Sessions of the peace in and for the county of New York upon an indictment which charged him with the crime of assault in the first and second degrees—a second offense.   It was alleged in the indictment that the accused in the year 1901 had been convicted of a felony, to wit, an attempt to commit the crime of grand larceny in the second degree, and after such conviction was sentenced to imprisonment in the penitentiary; that thereafter, and on the 29th day of December, 1904, he feloniously made an assault upon one William O'Brien, whom he shot with intent to kill.   Upon the trial of the indictment the defendant was found guilty, and judgment was pronounced against him in due form of law. He appeals from that judgment.

There is no question of the first conviction.   It was fully proven by record evidence and the identification of the defendant as the person convicted.   It appeared in evidence that the defendant was the keeper of a drinking saloon, or so-called concert hall, on the Bowery, in the city of New York.   Early on the morning of December 29, 1904, at about 3 o'clock, several persons were assembled in this saloon.   They were drinking and carousing.   Among them was one William O'Brien. He was talking in a loud voice, and was evidently in anger.   He referred to the defendant in insulting terms, called him a "stool pigeon," and declared that he would "get even" with him.   When those words were uttered by O'Brien, he, the defendant, and a woman named Sadie Ennis formed a group, and evidently had been talking together.   They were standing in the rear of the defendant's saloon.   O'Brien left them, and proceeded toward the front of the premises, going down some steps. When he reached the foot of the steps, he was shot, the bullet striking him under the region of the heart.   There was testimony given by two boys (McGivern and Brady), who saw the occurrence, that the shot was fired from a pistol in the hands of the defendant.   Those witnesses give a circumstantial and detailed account of that occurrence, and from their statements, which are not contradicted in any substantial detail, it was established that the shooting was done by the defendant.   Another witness (Donovan) was in the rear of the room when the excited talk was heard, and he also saw Smith, the defendant, shoot O'Brien. There can be no possible doubt upon the testimony of the identification of the person who discharged the pistol.   No witnesses were called by the defendant, and the case was left to the jury upon the evidence introduced by the people.

The defendant asks for a reversal of the judgment on several grounds, the first being that the assistant district attorney in opening the case to the jury referred to a matter entirely irrelevant to the inquiry properly.

before them, and which it is claimed must have affected from the beginning the minds of the jury adversely to the defense. In his opening address the assistant district attorney stated that O'Brien had been a witness on the trial of an indictment of a drunken policeman for shooting another person; that the police officer and one Brennan were drinking in the defendant's saloon, and after fighting there went to the sidewalk, where the officer shot and killed Brennan. It was stated that O'Brien was a witness of this occurrence, and testified against the policeman, who was convicted. Several times during the trial counsel for the prosecution referred to that subject, his claim being that it was competent as evidence of motive on the part of the defendant to commit an assault on O'Brien, who, by the testimony given on the trial of the police officer, exposed the disorderly character of the defendant's saloon. When the remarks were made by the prosecuting officer, the court, apparently of its own motion, suggested that the assistant district attorney confine himself to what occurred at the time of the shooting of O'Brien, and that if it became necessary to prove motive it might be done thereafter. The defendant's counsel moved to withdraw a juror, on the ground that the statements made by the counsel for the people were calculated to prejudice the defendant, and it was not possible for him to obtain a fair and impartial trial; that motion was denied, and the defendant's counsel excepted.

It is apparent that in making the remarks which were thus criticised the assistant district attorney believed that it was competent for the prosecution to prove that Smith had a motive which might impel him to commit an act of violence upon the person of O'Brien, and we are unable to see that there was an intention to create a prejudice in the minds of the jurors against the defendant. The remarks were not made heedlessly or impulsively, or without regard to the defendant's rights. The prosecuting officer claimed at the trial, and it is now argued with considerable force, that the statements objected to were competent as evidence of motive. Those remarks we think, do not come within the condemnation of such cases as People v. Wolf, 183 N. Y. 464, 76 N. E. 592; People v. Smith, 162 N. Y. 531, 56 N. E. 1001; People v. Mull, 167 N. Y. 247, 60 N. E. 629, and similar cases. We cannot say that it is misconduct on the part of a prosecuting officer in a criminal case to allude to facts and circumstances which he believes are connected with and germane to a charge contained in an indictment, especially where it is not at all clear that his contention in that regard is erroneous.

It is further claimed by the defendant that prejudicial error was committed by the court in permitting the prosecution on redirect examination to ask certain questions of the witness O'Brien, the person who was shot. That man was called by the people as a witness, and he simply testified that he was shot some time in the month of December, 1904. On cross-examination the witness was asked: "Do you know who shot you?" He swore that it was not the defendant. The court asked him: "Why haven't you told us who shot you?" and the witness replied, "Well, positively, I did not see any man shoot me; I would not accuse the party who shot me; I do not know who shot me." He said that "positively, under his oath," he did not know who shot

him. He further testified that he was in 23 Bowery (the defendant's saloon) on the night in question, and there had an altercation with the woman Sadie Ennis. He also stated that the stepfather of a man named Brennen asked him who shot him, and that he stated that he would settle it himself when he got out of the hospital. He was asked on his redirect examination whether he had not stated to one of the officers that it was "Billie Smith" who shot him, and he answered, "No." All this testimony on redirect examination seems to have been objected to on the ground that the prosecution could not contradict its own witness. It is evident that this witness was reluctant to testify, and was evasive and did not intend to incriminate the defendant. He had not been asked by the prosecution who shot him; that question was put by his own counsel, and on redirect examination the prosecution merely followed up an inquiry originating with the defense. Nothing was elicited prejudicial to the defendant.

It is contended that the trial judge erroneously refused to charge without qualification a request of the defendant's counsel as follows:

"I ask your honor to charge the jury that the failure of the people to call Sadie Ennis may be taken as a circumstance, if she was called, her testimony would be adverse to the people's theory of the case."

Before any reply was made to this by the court, the assistant district attorney requested the judge to charge that the same proposition was applicable to the defendant's not calling Sadie Ennis. This woman was present in court during the trial. The court said:

"She was here, and could be called by either side. Why should not that presumption apply to you as well as to the defendant? The rule, gentlemen, is that, where there is an eyewitness to an occurrence, and it is in the power of either side to call that witness, and they do not call the witness, it is a fair inference that her testimony would be against the side failing to call her. A party's failure to call a witness whom he might call does not generally raise a presumption that his testimony would be unfavorable to such party, especially if such witness is equally accessible to both parties, or his testimony would be simply cumulative." Chase's Stephen's Digest Law of Evidence, 314, citing Scovill v. Baldwin, 27 Conn. 316; Bleecker v. Johnston, 69 N. Y. 309; State v. Fitzgerald, 68 Vt. 125, 34 Atl. 429; Coelman v. State, 111 Ind. 563, 13 N. E. 100; Cross v. Lake Shore, etc., R. Co., 69 Mich. 363, 37 N. W. 361, 13 Am. St. Rep. 399; Kerstner v. Vorweg, 130 Mo. 196, 32 S. W. 298; Bates v. Morris, 101 Ala. 282, 13 South. 138.

We do not think that the defendant was entitled to the instruction in the form in which he presented it. He asked the court to charge that the failure of the people to call this woman Ennis may be taken as a circumstance that if she were called her testimony would be adverse to the people's theory of the case. The most that he could have been entitled to was an instruction that under such circumstances the jury could take that fact into consideration, not that the woman would positively testify against the people's whole case.

On the entire case, we think it clear that the defendant was guilty of the crime for which he was convicted, and that his rights were fully protected on the trial, and that justice requires that the judgment should be affirmed. All concur.