THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* WILLIAM MOORE, Appellant.

Third Department, July 26, 1962.

58

*Rosen & Rosen* (*George H. Rosen* of counsel), for appellant.

*Benjamin Newberg, District Attorney,* Sullivan County, for respondent.

BERGAN, P. J. Defendant has been convicted of rape, second degree, committed in June, 1959 by intercourse with his step-daughter, then 12 years old. The proof of the crime is by the testimony of the child herself, age 14 at the time of trial; and by oral admissions made by defendant to a police officer.

The mother of the child and the wife of the defendant was a witness to significant circumstances touching on the crime. She was not called by the People; she was called as a witness by the defendant on a collateral matter; but was asked no questions either by the defendant or the People relating to her observations relating to the crime. The main question on appeal is whether the jury were entitled to draw an inference that her testimony would have been unfavorable to the prosecution.

The child testified that while she was still in her bedroom with defendant after they had intercourse, her mother came into the bedroom " just as he started putting his robe on and started to go out the door and she asked me what happened. I was too petrified to answer." On cross-examination the child was asked why " on this particular day was there anything so particular about that act as on any other day? " She answered " Because my mother came up and she caught us." She further testified that she was in bed when her mother " caught " her.

The mother was not a witness before the Grand Jury, but her statement was taken by the police and was part of the proof on which the warrant for defendant's arrest was based. In this statement the mother said that she had " found my husband in bed with my daughter Linda." She said that she pulled the covers off Linda and found her naked; and " I could also see that my husband was naked too."

The mother, therefore, was a witness of prime importance on the commission of this crime. She was the only adult in position to give vital evidence from direct observation of the circumstances surrounding the crime. Proof of the crime otherwise rested on the narrative of a child and on oral admissions of defendant given to the police.

Unless there were valid reason why such a witness should not be called, the District Attorney should ordinarily be expected to call her; or, failing to do this, the jury should have been permitted to draw the inference that if called her testimony would have been unfavorable to the People.

The usual reason why a wife would not be called by the prosecution, that her testimony would tend to favor her husband, did not obtain here. A short time before the criminal prosecution was instituted, the parties were separated and the wife had instituted a divorce action against the defendant. It is, of course, competent for a party not calling a witness, to explain his failure to do so. (22 C. J., Evidence, § 56, p. 118.)

It is very well established in New York and elsewhere that the failure of a party to call a witness under his control who is shown to be in a position to give material evidence may result in an inference that the testimony of such a witness would be unfavorable to such a party. The rule was carefully examined in this court by HALPERN, J., in *Laffin* v. *Ryan* (4 A D 2d 21). (See, e.g., *Group* v. *Szenher*, 260 App. Div. 308, affd. 284 N. Y. 741.)

The question of " control " is a relative thing and depends on the nature of the case. The rule has been applied to the prosecution in a criminal case, even though literally the People

are not deemed to have "control" of witnesses. In *People* v. *Fiori* (123 App. Div. 174) it was held that defendant was entitled to a charge that the failure of the People to call two physicians who had performed an autopsy, who had testified before the Grand Jury, and who were present in court at the trial, "should be taken into consideration by the jury in determining whether or not they would have testified to the contrary" (p. 187).

In the same direction is *People* v. *Smith* (113 App. Div. 396): although the form of the instruction there indicated was that the jury should be instructed they could "take into consideration" the failure of the People to call a witness to the crime.

In the *Smith* case, and in many others, both civil and criminal, the court has struggled with the problem of the inference to be drawn from a failure to call a witness equally available to either side, and it has often been said that no inference is to be drawn in such a situation. (*Hayden* v. *New York Rys. Co.,* 233 N. Y. 34; *Longacre* v. *Yonkers R. R. Co.,* 236 N. Y. 119; *People* v. *Elbroch,* 250 App. Div. 583, 589.)

If this were automatically applied in the sense that the witness could have been physically subpœnaed by a defendant as well as by the People, and thus equally "available", it could almost never be applied in a criminal case. But it was applied, as we have seen, in *People* v. *Fiori* where the witnesses were actually in the courtroom and not called by the People.

In the case before us the record shows that the wife of the defendant was actually in the District Attorney's office every day during the trial. The opinion of Hiscock, Ch. J., in one of the leading cases on this subject *Hayden* v. *New York Rys. Co.* (*supra*) makes it clear that "control" of a witness is used in a very broad sense to include "influence of" as well as employment or management.

There is little doubt that where an important witness to a crime, whose statement has been part of the evidence on which an original warrant of arrest is issued and who is physically present every day of a trial in the District Attorney's office, is not called by him, there is a sufficient relationship between the prosecution and the witness to evoke the inference if a jury so find. The ultimate rationality of the rule, including the question of equal "availability" is that if a party who normally would be expected to call a witness in support of his case — where the witness is in a position to give substantial evidence, not merely cumulative — neither calls him nor gives explanation for failure to call him, then the jury should be permitted to draw an adverse inference.

And it is at least doubtful, that as between a defendant in a criminal case, presumed to be innocent and required to call no witness, and the People, who have the burden of proof beyond a reasonable doubt, the rule of equal availability of witnesses to the commission of a crime has any sensible application. In this connection, the passage from the opinion by FINCH, J., in *People* v. *Rides* (273 N. Y. 214, 217) has significance: "Nor does the failure of the defendant to call the doctor or his mother raise an inference which can be substituted for the necessary proof."

A clear summary of what seems to be the general rule, drawn from many American cases (22 C. J., Evidence, § 56, pp. 119, 120; 31 C. J. S., Evidence, § 156, pp. 858, 859):

"It has been laid down in a large number of cases that where a witness is equally available or accessible to both parties, no presumption or inference against either party can arise by reason of his failure to call such witness.

"However, this statement has been characterized as inadvertent, and it would seem that it should apply in its full sense only where both parties are equally interested to procure the evidence of such witness, for a witness, while equally accessible to both parties, may be extremely favorable to one, and unfavorable, or even hostile, to the other, and under these circumstances it would seem a fair inference that the party to whom such witness was favorable omitted to call him because his testimony would not support the contentions of such party. It is not difficult to find cases where an unfavorable inference has been indulged against a party who failed to call a witness who naturally would be favorable to him, regardless of the fact that the witness was in court and could have been called and examined by the other party."

The problem has been somewhat complicated in the case now before us by the fact that the defendant did call defendant's wife and sought, without success, to examine her on a collateral matter to which we will advert in a moment. When this attempted direct examination was completed, the People asked the witness no question.

In these circumstances the problem is whether there is still an inference which the jury might draw that on the issue of the crime itself, the testimony of the witness would have been unfavorable to the People. We think such an inference was permissible and should have been allowed.

If the failure to call a witness, available and in a courtroom, could give rise to the inference, the failure to examine a witness actually on the stand on the subject of the crime logically

would support the same inference. We have found no case directly in point on this question; but the decision in *Fleck* v. *Cohn* (131 App. Div. 248) seems to point in this direction. There a party did not on his own case call a witness under circumstances where the failure to do so might raise the inference that his testimony would have been unfavorable to such party. But his adversary called the witness; and thereupon the party who had failed to call him made that witness his own by examining him on the issue.

The court held that here there was no presumption " arising from an original failure to call him " (p. 250). This would suggest that had the People examined the wife on the subject of the crime when called by the defendant, no inference from the original failure to call her would have arisen; but that the failure to examine her when then called still permitted the jury to draw an unfavorable inference from a failure to call her.

Although the form of the request to charge by the defendant was taken from a quotation in the opinion in *Noce* v. *Kaufman* (2 N Y 2d 347, 353) that because of the failure of the District Attorney to call Mrs. Moore " the strongest inferences may be drawn against [the prosecution] which the opposing evidence in the record permits ", it may not be the best suited language for the instruction of the jury in the circumstances of this case. Still, if the Judge were not willing to put the instruction in just this form, he was required in response to such a request to charge the jury in substance that they might draw an inference, from the failure to call her, that her testimony would have been unfavorable to the prosecution.

There is, we believe, of all the numerous grounds of error assigned on appeal, one other which has substance. There was a delay of over a year — from June, 1959 when the crime was committed, to July, 1960 when criminal prosecution was commenced against the defendant. The circumstances make it clear that the wife of defendant and the mother of the child knew from her own observation and from her statement to the police that " I told Linda that I was going to have her sent away to a home for girls " that a crime had been committed in June, 1959.

Although she had an explanation for the delay, i.e., that she was afraid of defendant, the failure of the mother to make a criminal complaint in these circumstances for over a year and the motivation of that failure, were matters which should have been explored upon the trial. The pendency of the action for a divorce between the defendant and his wife, and the nature of the affidavits in a motion before the court in that action filed

shortly before this criminal action was commenced, were matters germane to the motivation leading to the prosecution.

In the case of a young child a delay in prosecution by a mother in whose custody the child is, and whose normal impulse would be to act upon such knowledge as defendant's wife here had, is a matter germane to the issue.

This is not a question of credibility, merely, but of motivation underlying a delayed prosecution. As CHURCH, J., noted in *Higgins* v. *People* (58 N. Y. 377, 379): " Any considerable delay on the part of a prosecutrix to make complaint of the outrage constituting the crime of rape, is a circumstance of more or less weight, depending on the other surrounding circumstances." Thus the defendant should have been allowed to develop before the jury, within reasonable limits, the pendency of the divorce action between the defendant and the child's mother between the time of commission of the crime and the institution of the criminal prosecution some 13 months later.

Except for these two assigned errors we would affirm the judgment. The verdict is not, in our view, against the weight of evidence; and the other errors assigned are not substantial.

The judgment should be reversed on the law and a new trial ordered.

HERLIHY and REYNOLDS, JJ. (dissenting). Our dissent and vote for affirmance of the conviction of the defendant is limited to the two grounds which the majority rely upon for reversal.

1. Failure to instruct the jury as requested by the defendant, as follows: " Defendant requests the Court to charge with respect to the failure of the District Attorney to call as a witness Mabel Seeley Moore that the strongest inferences may be drawn against the prosecution, which the opposing evidence in the record permits."

2. The delay between the commission of the crime and the commencement of the criminal prosecution.

As to the failure to charge as requested, in the present status of the law in criminal cases, the defendant and his counsel are entitled to a copy of any statement in the possession of the prosecutor and if the witness appeared and testified before the Grand Jury, the defendant and his counsel are entitled to a copy of such testimony. Thus, there has been a substantial change in the procedural and evidentiary aspects of a criminal case since *People* v. *Fiori* (123 App. Div. 174) and the other cases cited in the majority opinion. When, under these circumstances, the witness does not testify for either party, for such a request to be charged is prejudicial to the rights of the People.

In this present case, the counsel for defendant had a copy of the statement of the witness; she did not testify before the Grand Jury, nor was she the prosecutrix. Counsel then called the witness on the defendant's case and proceeded to examine her and, in our opinion, the trial court was entirely correct in denying the request to charge in the wording as set forth above. There is no issue of "control" in this case, as suggested by the majority, when the defendant calls the witness to the stand.

From a reading of the record, it is quite apparent that the District Attorney did not call this witness, knowing that if he did, the trial would develop into the issues of a pending divorce action. The prosecutor, being satisfied that he had introduced sufficient proof of the alleged crime, should not, under the penalty of a threatened charge, be compelled to produce other witnesses and offer additional and ofttimes cumulative proof. The defendant should not exercise control over the case of the prosecution any more than the prosecutor should exercise control over the case of the defense. *People* v. *Rides* (273 N. Y. 214) has no application to the factual situation here. We will limit ourselves to the present factual situation in deciding that the refusal of the court to charge as to the failure to call a witness was proper and did not constitute reversible error.

*As to the second point of unreasonable delay,* the prosecution was confronted with the usual problem in sex cases. As has been aptly stated, these crimes do not happen in the light of day but under cover of darkness and without witnesses. It is a pattern with children, and quite understandable, that they often fail to disclose sexual acts because of threats, fear of harm or fear of punishment to themselves. Where, as here, the relationships are within the confines of the family, there is even greater cause for failure to reveal. Concededly, in this case, there is some association between the divorce proceedings and the commencement of the criminal action but there is no evidence in the record to show that the mother knew of any acts of intercourse between her husband and her daughter until the case broke. The young girl testified on cross-examination that she stopped having relations with the defendant "Because he was getting a divorce and I didn't want anything more to do with him". Defense counsel asked the following question: "The only reason then that you stopped having relations with him is because the defendant was suing your mother for divorce, isn't that so?", to which the witness answered "Yes".

From this line of questioning, together with questions directed to the mother of the young lady, the jury was apprised of the fact that the divorce proceedings had some association with

the criminal prosecution and the jury was in a position to perceive whether the girl was prevaricating. (*People* v. *Conklin,* 15 A D 2d 514, affd. 11 N Y 2d 1086.) While we feel the court would have been justified in permitting a limited examination of the witness as to the pending divorce and the affidavits used thereon, under the circumstances and from the record as a whole, we do not feel the refusal constituted reversible error.

We are of the opinion that there was a sufficiency of knowledge before the jury of the relationship between the young lady, the witness mother and wife and her defendant husband. We are of the firm belief that the observation of the witnesses, the manner and method of giving their testimony, together with a generally acceptable charge to which no exception was taken, ordinarily permit the jury to properly resolve the issues as to credibility, veracity, motivation and other human reactions and deciding whether the proof is clear and convincing in determining the guilt or innocence of the defendant. There are, of course, exceptions to all rules but the record herein does not present any such exception. Under all the circumstances, we find no basis for a reversal because of inexcusable delay in starting the criminal proceedings.

The judgment of conviction should be affirmed.

GIBSON and TAYLOR, JJ., concur with BERGAN, P. J.; HERLIHY and REYNOLDS, JJ., dissent, in an opinion.

Judgment reversed, on the law, and a new trial ordered.