■    THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BENNY DOUGLAS, Appellant.—Appeal from a judgment of the County Court of Albany County, rendered September 3, 1975, upon a verdict convicting defendant of the crime of conspiracy in the first degree. Defendant was indicted, tried and convicted of conspiracy in the first degree in violation of section 105.15 of the Penal Law. Specifically, he was charged and convicted of conspiring and agreeing with one Barbara Cooke to sell heroin to State Police Investigator Dandaraw. He received an indeterminate sentence with a maximum term of 20 years. This appeal ensued and defendant raises several issues urging reversal. Defendant contends that the evidence is insufficient as a matter of law to prove conspiracy in the first degree. We disagree. To prove the crime charged in the indictment, the People had the burden of establishing that defendant intentionally agreed and conspired with Barbara Cooke to sell heroin to Dandaraw. The record reveals that on January 7, 1975 at about 5:05 P.M. Dandaraw went to an apartment located at 107 Lark Street in Albany, rang the doorbell, Barbara Cooke appeared

and he asked her "Is Benny home?" She replied that she did not know him (Dandaraw) and to wait. She went back into the apartment and returned with defendant. The investigator asked defendant if he could buy some heroin and defendant replied, "Yes, how much do you want?" Dandaraw replied, "I'll take four bags." Defendant then turned to Barbara Cooke and said, "Get four bags." Dandaraw gave her $40. She then went into the apartment, returned shortly and gave four bags of heroin to Dandaraw. Defendant took the stand and denied being present at the time of the alleged sale, contending that the investigator was mistaken. This conflicting testimony presented questions of fact and credibility to be resolved by the jury. Implicitly the jury resolved these questions against the defendant. The proof, therefore, as accepted by the jury was sufficient to establish that defendant and Cooke possessed heroin already packaged and they had a prearranged scheme to sell it when the occasion arose. In our view, the record contains ample proof to justify the jury's verdict. It should not be disturbed by this court unless sufficient error exists calling for a reversal. Defendant contends that it was prejudicial and reversible error for the court to refuse to charge that "the failure of the People to produce James Miller or explain his absence can permit the jury to infer that whatever testimony James Miller had to offer would be detrimental to the prosecution of the case." The record reveals that Dandaraw was the only witness called by the prosecution to establish the facts and circumstances surrounding the incident from which the conspiracy charge arose. It was solely his testimony that placed defendant at the scene. Defendant, on the other hand, denied any involvement in the transaction and testified he worked that day and did not go to 107 Lark Street until after 5:30 P.M. Consequently, the record presents two diametrically opposed stories. The record further demonstrates that in reply to a question on cross-examination of Dandaraw as to who was present at the time of the sale, he stated, "Myself, the defendant Benny Douglas, Barbara Cooke and another individual." He then identified the other individual as James Miller and further stated "He was with me, sir, that's correct." The record further establishes that in addressing the court, defendant's counsel said, in referring to Miller, that he discovered during cross-examination of Dandaraw that there was a confidential informant involved at the scene. This was not denied by the District Attorney. It is well established that an unfavorable inference may arise when a party fails to call a witness under his control who is shown to be in a position to give material evidence *(People v Valerius,* 31 NY2d 51; *People v Moore,* 17 AD2d 57, cert den 371 US 838). While such an inference may not be drawn from testimony which is merely cumulative or trivial, where the testimony is noncumulative, however, a defendant cannot be deprived of his right to a proper charge as to the inferences which might be drawn by the jury *(People v Brown,* 34 NY2d 658). An examination of the record clearly establishes that Miller was at the scene in the company of Dandaraw. It is fair and reasonable to presume he possessed material information. The question, therefore, narrows to whether he was in the control of the People. Control is a relative thing and depends upon the circumstances of the particular case *(People v Moore, supra).* The control of a witness is used in a very broad sense to include "influence of" as well as employment or management *(Hayden v New York Rys. Co.,* 233 NY 34). In our view, the jury could, on this record, reasonably conclude that Miller was in the control of the People. This being so, it was error for the court to refuse defendant's request to charge *(People v Rodriguez,* 38 NY2d 95). There was a sharp dispute in the testimony of the two witnesses on the critical issue of

defendant's presence at the scene. He was placed there solely on the narrative of Dandaraw. The one person who was in a position to corroborate Dandaraw's testimony was Miller and he was not called. His testimony could have been of prime importance. The jury had the right to consider whether the failure to call him was because his testimony would not be favorable to the People. Viewing the record as a whole, it is conceivable that if the jury were properly instructed as to the inferences it might draw from the People's failure to call Miller, a contrary verdict might have resulted. In light of the close issues of fact and credibility, we are of the view that the record fails to demonstrate defendant's guilt by overwhelming evidence. The error, therefore, is not harmless and requires reversal and a new trial (see *People v Crimmins*, 36 NY2d 230). We have examined the other issues raised by defendant and find them unpersuasive. Judgment reversed, on the law and the facts, and a new trial ordered. Greenblott, J. P., Sweeney and Main, JJ., concur; Larkin and Reynolds, JJ., dissent and vote to affirm in the following memorandum by Larkin, J. Larkin, J. (dissenting). We respectfully dissent. The majority order a new trial because the trial court refused to charge that "the failure of the People to produce James Miller or explain his absence can permit the jury to infer that whatever testimony James Miller had to offer would be detrimental to the prosecution of the case". The sole reference to James Miller in this record is the statement of Police Officer Dandaraw on cross-examination that at a certain time and place the defendant herein, Barbara Cooke, and another individual were present. Dandaraw then identified the other individual as James Miller and stated that "he was with me, sir, that's correct". There is no further explanation in this record as to who James Miller was, whether he was a police officer, an informant, or in what capacity or why he was present at the time, except for the gratuitous, unsworn allegation of the defendant's attorney that he discovered during the cross-examination of Dandaraw that there was "a confidential informant involved at the scene". The record does not support that statement. On this meager record the majority conclude that the prosecution chose not to call a material witness over whom it had control and, therefore, the jury was entitled to infer that whatever testimony Miller had to offer would be detrimental to the prosecution of the case. In support thereof the majority decision cites *People v Valerius* (31 NY2d 51) and *People v Moore* (17 AD2d 57, cert den 371 US 838). In our view, neither of these cases should control our decision in the instant case. In *Moore (supra)*, a rape involving a father and his then 12-year-old daughter, the child's mother did not testify although the statement given by the girl's mother to the police, in which she stated she found her husband in bed with her daughter, formed the sworn allegations on which the warrant for the defendant's arrest was obtained. In addition, the mother was in the District Attorney's office every day during the trial. There is no proof in this record as to whether Miller was ever in the District Attorney's office or even under the control of the District Attorney, let alone be the affiant on whose sworn testimony the warrant of arrest was issued. In *Valerius (supra)* a man with a history of mental illness who was a suspect in a series of fires was questioned by a police officer from midnight until 4:30 in the morning when he was turned over to another police officer who was advised that the defendant wanted to confess. At the suppression hearing the defendant testified that he had been beaten for four and one-half hours and finally confessed to rid himself of the first police officer. That first police officer did not testify. The court therein held that the voluntariness of the defendant's confession was not proven beyond a reasonable doubt because, the court

said, the Trial Judge should have assumed that since the first police officer was under the control of the prosecution and did not testify, his testimony, if he were called, would have been unfavorable to the People and corroborative of the defendant's claim. The majority further cite *People v Rodriguez* (38 NY2d 95) in support of their conclusion. In *Rodriguez* the court instructed the jury that it could consider the failure of the defendant to call his wife, who was an eyewitness to the events at issue, as a witness, in circumstances under which the wife would not be able to claim any privilege. The court held that a spouse or relative of a defendant is perforce deemed to be under the defendant's control *(People v Hovey,* 92 NY 554). In *Moore, Rodriguez* and *Valerius (supra),* there is no question that the witness who failed to testify was under the control of the party who should have called him. There is no such proof in this record. There is a total absence of any proof of control of James Miller by the District Attorney. It is not incumbent upon the prosecution to call every witness to a crime or to make a complete, detailed accounting to the defense of all law enforcement investigatory work *(People v Buckler,* 39 NY2d 895; *People v Stridiron,* 33 NY2d 287). In addition, the prosecutor has the duty to disclose information in his possession that is favorable to an accused and material to the guilt or punishment *(Brady v Maryland,* 373 US 83; *People v Stridiron, supra).* There was no obligation on the prosecution to produce corroborative proof of Dandaraw's testimony, as the majority suggest. Nor does this record indicate that defense counsel asked to have the witness produced or sought to subpoena him. Under these facts and without any proof of control of the witness by the prosecution, the charge sought by the defendant was properly denied. The judgment should be affirmed.