OPINION OF THE COURT
Sheldon S. Levy, J.
Do the People have an obligation to call as their own witness a confidential informant who was present at an alleged sale of narcotics by the defendant to an undercover police officer? If so, would the voluntary production by the People of such a confidential informant for pretrial interrogation by defense counsel and/or by the court abrogate any such duty? If not, would the defendant be entitled to a “missing witness” charge if the People declined to use the informant as a witness? If so, what form of “missing witness” charge should be used? And, finally, what type of comments, if any, would respective counsel be permitted on this subject in their summations?
If these questions in combination are not of first impression, then they are certainly of previous faint impression.
In point of fact, these issues have arisen in the course of a jury trial of the defendant on charges of criminal sale of a controlled substance in the second degree and criminal possession of a controlled substance in the fifth degree. After both sides had rested — the defendant without producing any witnesses — defense counsel made the following request to charge with respect to the prosecution’s failure to call as a witness a confidential informant who was concededly the only other eyewitness to the crimes charged: “The failure of the People to produce the confidential informant as a witness or to *165 explain his absence can permit the jury to infer that whatever testimony the confidential informer had to offer would be detrimental to the prosecution’s position.” (Admittedly, the request to charge was based upon a somewhat similar request approved in People v Douglas, 54 AD2d 515, 516.)
The pertinent facts leading up to that request are briefly stated. Before the trial began, the People had apparently determined that they would not use the confidential informant —although an eyewitness to the narcotics sale charged — as a witness on their direct case. The purported reason for this, as stated by the Assistant District Attorney, was that the informant had been threatened by relatives of the defendant and was afraid to testify. The People also asserted that his testimony would be duplicative and cumulative of the evidence of the undercover police officer. Nevertheless, upon request, defense counsel, out of the presence of the defendant, was permitted to interview the confidential informant.
Thereafter, defense counsel’s evaluation of the proffered witness was that he would support the undercover officer’s version of events in some respects and directly contradict it in others. Although the People then held the informant available as a witness for the defense if so desired, defense counsel did not call the informant, did not call the defendant, and, in fact, rested upon the People’s case.
During the course of the trial, by way of cross-examination of two police witnesses, it was plainly revealed that the confidential informant was under the complete control of the People and the People’s witnesses. He was under indictment for a street level sale of drugs to the same undercover officer; his case was pending; and he had become an informant as a result of his arrest. He had also helped make other cases for the team that was not "operating” him.
After the prosecution’s presentation, it was obvious that the matter would be a close one for jury determination. The defense had raised a viable question as to identity of the perpetrator of the crime in view of brief observations, inadequate lighting conditions and lack of prior dealings. The People’s case against the defendant rested solely upon the evidence of the undercover officer. His credibility was firmly in issue. And yet there was one, but only one other individual —plainly available to the People and forcefully under their control — who could give direct, relevant and material testimony concerning the very crimes charged. Nor was there any *166 alternative source for such evidence on behalf of the defense (People v Singleton, 42 NY2d 466, 470).
Even where an informant may not be an eyewitness to criminal events, but is under the control of the People and has some material and relevant information to impart, there can no longer be any doubt that the People have a clear obligation to identify such person, to produce him and to make him available to the defense (People v Jenkins, 41 NY2d 307; People v Goggins, 34 NY2d 163). If there is any question about the relevance of the informant’s prospective testimony or his ability to testify at all, he must be produced, at least, for in camera interrogation by the court (People v Singleton, supra; People v Tranchina, 64 AD2d 616), and for an initial determination of any such issues raised. Where the People elect not to make such disclosure and production, the indictment may be dismissed in the interests of justice (People v Singleton, supra).
Moreover, the People must always make reasonable, good faith efforts to secure the attendance of such a witness (People v Jenkins, supra, pp 310-311). Defendant’s "right to confrontation, due process, and fairness” demand no less (People v Goggins, supra, p 168).
That being so, would not the same constitutional rights of a defendant and policy considerations against the risk of convicting the innocent mandate a nonavoidable duty on the part of the People to put on the stand an available person under their control, who was an eyewitness to the transaction in issue? In the case of a fellow pólice officer, who presumably was an eyewitness, the Court of Appeals has responded strongly in the affirmative (People v Brown, 34 NY2d 658; see, also, People v Valerius, 31 NY2d 51). No significant difference is discernible in the case of an available confidential informant who is under the control of the People (see People v Alamo, 63 AD2d 6). By such action, not only would the cause of justice and fair play be well served, but substantial credibility would be added to the proposition that a trial is really a search for the truth and not merely a lawyers’ game of strategy.
The People’s magnanimous action in affording defense counsel a private interview with the confidential informant in this case, when they had no intention of calling him as their own witness in any event, can only be analogized to "giving ice away in the winter.” The People had a plain duty to make the *167 informant available to the defense under the dictates of the People v Jenkins (41 NY2d 307, supra) case, or, at a minimum, to produce the witness for court interrogation, unless initially they could clearly demonstrate that the prospective witness was either not under their control or was unavailable. In the present case, the People could do neither, since the informant was surely under their control and was clearly available.
Nor can the prosecutor’s gracious gesture here, in tendering the eyewitness directly to the defense, serve to abrogate his obligation, pursuant to People v Brown (supra), to call the informant, for better or for worse, as his own witness as a part of the People’s direct case. The testimony of the confidential informant could easily be noncumulative and would certainly not be trivial (People v Brown, 34 NY2d 658, supra). The mere offer of such a witness does not make him truly "available” to the defense. Moreover, the rule of equal accessibility of the parties to a witness does not apply where the witness is plainly favorable to one side and hostile to the other (People v Rodriguez, 38 NY2d 95, 98). The rule, in fact, can only logically be applied where both parties have an equal interest in procuring the testimony of the witness (People v Moore, 17 AD2d 57, 61), which was certainly not the situation here.
To place upon the defense the decision whether to call to the stand an obviously hostile witness, who is not under its control and is only technically "available” to it, or to lose the evidence of such an eyewitness altogether, would be an unnecessary and onerous "Hobson’s choice.” This is especially so since the defense frequently will offer no evidence of its own, will have no desire or intention to do so, and has absolutely no obligation to so do (see People v Moore, 17 AD2d 57, 61, supra). Any other view would most seriously impinge upon a defendant’s basic constitutional rights, including the presumption of innocence, the privilege not to present any witnesses or evidence and the People’s nonshifting burden of proof beyond a reasonable doubt.
Accordingly, and under the circumstances presented, the People’s duty to use the confidential informant as their own witness is clear. The necessary corollary is that where the People fail to do so — or the explanation for such failure has not been accepted by the court (when a preliminary hearing on the issue of "availability,” "control” or "reasonable efforts *168 to locate” has been requested and granted) — then the defendant has an absolute right "to a proper charge as to the inference which might be drawn by the jury from the failure of the prosecution to produce the witness” (People v Brown, 34 NY2d 658, 660, supra; emphasis added), and also to permissible comment in summation upon the People’s dereliction in this regard (People v Wright, 41 NY2d 172, 176; People v Brown, supra, p 660). Simply put, unless there is some demonstrably valid reason why an eyewitness confidential informant should not or cannot be called, and the prosecution would ordinarily be expected to put such a witness on the stand, the jury should be given adequate instruction as to how to treat such failure.
Another apparently novel question therefore arises as to what is the proper form of "missing witness” charge in such a situation. People v Brown (34 NY2d 658, supra) did not solve the problem. Initially, it is fairly obvious that the appellation "missing witness” charge is itself a misnomer. The witness is seldom, if ever, actually missing (except, perhaps, from the courtroom) and, in fact, it is a party’s failure to call a witness, who is under his control and available to him, which is really being addressed by the request for a "missing witness” charge.
More important to our particular problem, there is a line of cases which in broad, general terminology counsel that the failure to call an available material witness who is under control and available, warrants an instruction to the jury that an adverse or unfavorable inference may be drawn (People v Valerius, 31 NY2d 51, supra; People v Miles, 48 AD2d 706; People v Douglas, 54 AD2d 515, supra; People v Alamo, 63 AD2d 6, supra). If by this language, these courts are saying that it is proper to charge a jury that they can infer that the testimony of a "missing witness” would have been affirmatively adverse to the party not calling him, then I must emphatically disagree (see Gill v Anderson, 39 AD2d 941, cited as authority in People v Rodriguez, 38 NY2d 95, 101). Instead, I believe that the word "adverse” was used in a general sense and not specifically as to what inference could be drawn from the testimony of an uncalled witness (Milio v Railway Motor Trucking Co., 257 App Div 640; Robinson v City of New York, 5 AD2d 197, 199). It is beyond discussion that a jury may not guess, surmise or suppose concerning oral testimony that they have not heard and that is not evidence in the case (People v Williams, 34 AD2d 1046). A jury should not be allowed to *169 infer that a witness, if called, would testify adversely, unfavorably or detrimentally to the party who failed to call him (Gill v Anderson, supra; Milio v Railway Motor Trucking Co., supra), since that would be "pure and unadulterated” speculation.
In civil litigation, where both sides usually offer proofs, the proper charge is that the inference which may be drawn against the failing party is that the evidence already in may be taken most strongly against such party (Noce v Kaufman, 2 NY2d 347, 353). In the present criminal case, the language of these types of charges can have little applicability. Since a defendant has no obligation to produce any evidence or to call any witnesses, a jury cannot be charged with an inference concerning evidence that is not and never will be in the case. At the most, a jury should be instructed that they might consider whether a party’s failure to call such a witness was because his testimony would not support, corroborate or strengthen that party’s contentions or version of events (People v Wright, 41 NY2d 172, 176).
In my view, an example of a fair and balanced "missing witness” charge, upon the facts and circumstances in this case, and which does not encourage jury speculation (see Laffin v Ryan, 4 AD2d 21, 27; Richardson, Evidence [10th ed], § 92), is as follows: "In addition, members of the jury, you have heard some evidence concerning the presence of another person — a confidential informant — during the alleged sale of heroin by the defendant to the undercover police officer. If you find that such person was in a position to give relevant evidence as to some material fact or facts in issue, then you may infer — from the failure of the People to call such person as a witness or to explain his absence — if you deem it proper to do so, you may infer that the testimony of such person would not support the evidence adduced by the People as to such material fact or facts.”
The final interrogatory, posed by the defendant’s pointed "Request to Charge”, concerns the scope of permissible summation comment where the court has informed the parties of its intention to instruct the jury with respect to the People’s declination to call the confidential informant.
In the instant case, the defense in summation must be permitted to comment on the fact that the People failed to call — and failed to explain their failure to call — an eyewitness who plainly had material and relevant evidence to impart and *170 was under their control (People v Wright, 41 NY2d 172, 176, supra). But such comments should be limited to the perimeters of the court’s charge on the subject.
Accordingly, the defense may comment on the People’s control of the material witness; on their dereliction in not calling such an eyewitness; and upon the fact that no explanation for such failure was offered in evidence. Defendant’s counsel may also suggest that, therefore, the jury may infer, if they wish, that the testimony of the uncalled witness would not have supported, corroborated or strengthened the People’s version of events; or material facts in issue, as testified to by the People’s witnesses; or, specifically, the testimony of the undercover police officer concerning the alleged sale of narcotics by the defendant (People v Wright, supra, pp 175-176).
Defense counsel, however, should not be allowed to advise the jury that, as to the evidence of the confidential informant, they may surmise or guess that his testimony would be detrimental, adverse or contradictory to the People’s case or to the proofs of one or all of the People’s witnesses.
On the other hand, under the circumstances of this case, there is very little, if anything, that the prosecutor in his summation could raise in response and he should not be permitted to do so (People v Wright, 41 NY2d 172, 175-176, supra; but cf. dicta in People v Rodriguez, 62 AD2d 929). The People cannot comment that the testimony of the uncalled witness would have been merely trivial or cumulative or an unnecessary encumbrance on the record; that the witness would not have been hostile to the defendant; or that he was equally available to both sides. These issues already have been decided against the People by the court. Nor may the prosecutor suggest any reason for the absence of the witness since no evidence on that subject was adduced for jury consideration or is fairly inferrable (People v Ashwal, 39 NY2d 105, 109-110).
Furthermore, the People, like the defense, may not request the jury to speculate concerning what the informant would or would not have testified to if called, or to draw any inference different from that which the court has informed the parties that it would expound upon in its charge.
As stated previously, therefore, the prosecutor would be well advised under these particular circumstances to avoid the subject of the "missing witness” entirely and to concentrate his summation efforts on his affirmative case. This approach would prevent warranted interruptions by defense counsel, if *171 such objectionable comments were made by the prosecutor (see People v De Jesus, 42 NY2d 519, 526).
In summary, under the facts of this case, the People do have a primary obligation to call the confidential informant as their own witness. The voluntary production of the informant for interrogation does not abrogate or lessen such duty, if the People fail to do so, the defendant is entitled to have the jury given a proper "missing witness” charge and to make fair comment in summation in accordance with the tenor and spirit of the court’s proposed instruction.
For all of the reasons stated, the defendant’s request to charge is granted to the extent only as indicated.