OPINION OF THE COURT
Jasen, J.
We are asked to decide on this appeal whether a physician who unlawfully issues prescriptions knowing that they will be used for illicit trafficking in drugs can be found guilty of criminal “sale” of a controlled substance under article 220 of the Penal Law.
Defendant was a licensed physician who engaged in the general practice of medicine in Cazenovia, New York. Beginning in January, 1978 and continuing for an eight-month period, defendant embarked on a scheme with one Stephen Raia which eventually led to defendant’s arrest and conviction. With names supplied primarily by Raia, *344 defendant would write prescriptions for various quantities of Demerol, quaalude, biphetamine and desoxyn. The names listed on the prescriptions were rarely those of any of defendant’s patients, and, in one instance, the name of a deceased patient was used. Information as to the number of prescriptions needed and the drugs required apparently was provided by Raia’s friend, Charles Sallin. The completed prescriptions were taken by Raia, Sallin and others to various local pharmacies to be filled. The drugs obtained were then sold by Sallin on the street or were used to “party” with by Sallin, Raia and others. For his efforts, defendant would receive half the money generated by the sale of the drugs or of the prescriptions themselves. On occasion, defendant would take back a portion of the contraband to support his own addiction to Demerol. In all, over 100 false prescriptions were issued by defendant in furtherance of this illicit scheme.
The continuous availability of. the drugs quickly led to abuse, and, on August 2, 1978, Charles Sallin died from an overdose of Demerol. Apparently prompted by the death of his friend, Raia contacted the Syracuse Police Department and informed an officer in the narcotics division of defendant’s activities. In exchange for being granted immunity from prosecution, Raia agreed to assist in the investigation and consented to having a transmitting device placed on his person.
On August 11, 1978, Raia went to defendant’s home in Manlius, New York, with a list of five names supplied by the police. Raia recited the names to the defendant, who then filled out the blank prescription slips. After Raia left defendant’s house, the five prescriptions immediately were turned over to the investigating officers. Later that day, Raia returned to defendant’s house and gave defendant $345 which also had been supplied by the Syracuse police. Raia, apparently of his own volition, then had defendant write two additional prescriptions, one for quaaludes and the other for desoxyn. It was agreed that the desoxyn was to be for defendant’s own use and the quaaludes for Raia’s. These prescriptions also were seized by the investigating officer, but, for some unexplained reason, were later re *345 turned to Raia. Raia had these prescriptions filled the next day, keeping the quaaludes for himself and returning the desoxyn to defendant.
Two weeks later, on August 24, 1978, this pattern of conduct was repeated, only this time at defendant’s office in Cazenovia. Defendant wrote three prescriptions for quaaludes using names supplied by Raia. All three prescriptions were seized by the police as Raia left defendant’s office. Later that day, Raia was given $450 which he turned over to defendant at his home in Manlius.
Five days later, on August 29, 1978, defendant was approached by Patrick Ryder and asked to write a prescription for quaaludes for Ryder’s friend, John Gory. Defendant filled out the prescription in Gory’s name and told Ryder he wanted “over $100” for it. Ryder met Gory that same day, and Gory paid $150 for the prescription. Gory then had the prescription filled and passed out the drugs to his friends. When Ryder returned to defendant’s house, defendant kept $75 for himself and gave $75 back to Ryder. On September 11, 1978, defendant was arrested.
The Onondaga Grand Jury returned a 480-count indictment against the defendant, charging him with numerous violations of the Public Health Law and the Penal Law. Pursuant to GPL 300.40 (subd 6, par [b]), the Trial Judge submitted 37 representative counts to the jury. The court also denied defendant’s motion to dismiss the four counts charging him with criminal sale of a controlled substance.
The jury found defendant guilty of nine counts of violating section 12-b of the Public Health Law, 10 counts of falsifying business records in the first degree (Penal Law, § 175.10), six counts of criminal facilitation in the first degree (Penal Law, § 115.08), one count of criminal possession of a controlled substance- in the seventh degree (Penal Law, § 220.03), one count of unlawfully growing cannabis in violation of section 3382 of the Public Health Law, two counts of criminal sale of a controlled substance in the sixth degree (Penal Law, § 220.31), one count of criminal sale of a controlled substance in the third degree (Penal Law, § 220.39), and one count of conspiracy in the *346 first degree for agreeing to sell certain controlled substances (Penal Law, § 105.17). Defendant thereafter was sentenced to a term of imprisonment of six years to life on the conviction of criminal sale of a controlled substance in the third degree. The sentences imposed on the remaining convictions were to run concurrently, except that the one-year sentences imposed for violating section 12-b of the Public Health Law were to run consecutively to the sentences for criminal possession of a controlled substance and unlawfully growing cannabis. The Appellate Division unanimously affirmed these convictions, and defendant was granted leave to appeal.
In this court, defendant asserts that his conviction for criminal sale of a controlled substance should be reversed. He argues that his conduct in merely writing illegal prescriptions does not constitute an unlawful sale of a controlled substance in violation of article 220 of the Penal Law. For the reasons that follow, the order of the Appellate Division should be modified so as to reverse defendant’s convictions for criminal sale of a controlled substance.[1]
We begin our analysis by reviewing the applicable statutes. Various sections of the Penal Law make it a crime to knowingly and unlawfully “sell” a controlled substance. (Penal Law, § 220.31 et seq.) The word “sell” is defined to mean “sell, exchange, give or dispose of to another, or to offer or agree to do the same.” (Penal Law, § 220.00, subd 1.) “Unlawfully” is defined as “in violation of article thirty-three of the public health law.” (Penal Law, § 220.00, subd 2.)
The Public Health Law also makes it unlawful for “any person to manufacture, sell, prescribe, distribute, dispense, administer, possess, have under his control, abandon, or transport a controlled substance except as expressly allowed by this article.” (Public Health Law, § 3304 [emphasis *347 supplied].) The statute states that the word “ ‘prescribe’ means a direction or authorization, by prescription, permitting an ultimate user lawfully to obtain controlled substances from any person authorized by law to dispense such substances.” (Public Health Law, § 3302, subd 29.) The word “sell” is defined in the same manner as under the Penal Law. (Public Health Law, § 3302, subd 32.) Various penalties are provided for violating the provisions of the Public Health Law relating to controlled substances. (E.g., Public Health Law, §§ 3345, 3380, subd 5; § 3382.) Violation of any provision for which no specific penalty is provided is punishable under section 12-b of the statute or under the Penal Law. Section 12-b of the Public Health Law makes any violator subject to a $2,000 fine, one-year imprisonment, or both.
Although under the Penal Law the term “sell” is expanded well beyond its ordinary meaning of parting with one’s own property for consideration, it cannot be read so broadly as to encompass the act of prescribing drugs. The Legislature, by separately defining the terms “prescribe” and “sell” in the Public Health Law and cross-referencing that statute to the various sections of article 220 of the Penal Law, has made clear that the two words have a precise and distinct meaning. Indeed, in Matter of Tonis v Board of Regents (295 NY 286), this court, in interpreting provisions nearly identical to those found in the current Penal Law and Public Health Law (see former Penal Law, § 1751; former Public Health Law, §§ 421, 423), held that a doctor who, while acting outside the course of his regular practice, issued two prescriptions to a known morphine addict did not unlawfully “sell” drugs even though the addict thereafter was able to obtain the morphine sulfate from a pharmacist. Nothing in the legislative history since our decision in Tonis (see Penal Law, art 220; L 1973, ch 276; L 1965, ch 1030) indicates that a different holding should obtain today. (Accord People v Shukla, 82 Misc 2d 912, affd on other grounds 58 AD2d 879, affd 44 NY2d 756; cf. Matter of De Pasquale v Board of Regents of Univ. of State of N. Y., 7 AD2d 692.)
Nor does the People’s reliance on the rule issued by the *348 Commissioner of Health serve to alter this result. (See 10 NYCRR 80.65.) That rule, promulgated by the commissioner pursuant to subdivision 2 of section 3308 of the Public Health Law, merely provides that a prescription issued to an addict or habitual user not in the course of professional treatment for the purpose of maintaining his or her habit “is not a prescription within the meaning of subdivision 30 of section 3302 of the Public Health Law.” This rule, assuming its applicability to the facts of this case, does nothing in terms of clarifying or reformulating the definition of the word “sell” under the Penal Law.[2]
In short, under article 220 of the Penal Law, to “prescribe” is not to “sell”. Although to most, a physician who flagrantly disregards his sworn professional obligation and abuses the public’s trust by allowing large quantities of dangerous drugs to enter illicit channels is no less a “pusher” than the layperson on the street who does not have the benefit of a license and medical degree, under the present statutory framework, merely writing a false prescription, even with the knowledge that it is to be used for illegal purposes, does not constitute the criminal “sale” of a controlled substance. Any further criminal sanctions for this type of conduct must come from the Legislature.[3]
*349 This is not to say that a physician who knowingly issues an illegal prescription can never be convicted of criminal sale of a controlled substance.. Indeed, such conduct could render the physician liable as an accomplice for the subsequent sale of the drugs by another person provided it is established that the doctor (1) intentionally aided the other in the commission of the crime; and (2) acted with the mental culpability required for criminal sale of a controlled substance. (Penal Law, § 20.00.) Writing a prescription with the knowledge that it is to be used for an illicit purpose would satisfy the requirement that the physician intentionally assisted in the commission of the crime. However, it must also be shown that, by issuing the prescription, the physician had a specific interest in having the actual drugs sold to some third party. Absent such a specific intent, a physician cannot be held liable as an accomplice to a criminal sale under section 20.00 of the Penal Law even though he intentionally and unlawfully aids another person in obtaining the controlled substance. Stated another way, issuing or selling an illegal prescription with an in-, difference towards whether the person who obtains the drugs from the pharmacy subsequently sells them to others is an insufficient basis for imposing liability upon a physician under article 220 of the Penal Law.
In this case, the jury was instructed that, for purposes of the counts charging criminal sale of a controlled substance, if they found that defendant was an accomplice of Raia, Sallin and Ryder, then the acts of those individuals would be chargeable to the defendant. Nevertheless, a review of the record reveals that there is insufficient proof to sustain defendant’s three convictions for criminal sale of a controlled substance.
For his activities on August 11, 1978, defendant was found guilty of selling 2.4 grams of biphetamine and desoxyn.[4] However, all of the first five prescriptions issued by defendant on that day, including the two prescriptions for desoxyn and biphetamine, were confiscated by the police as *350 Raia left defendant’s house. Although there was evidence that defendant intended that Raia was to sell the drugs to others, the prescriptions were never filled and no drugs were ever obtained. Thus, no sale was ever consummated. As to the remaining prescription for desoxyn issued on August 11, although that prescription was filled, it was written by defendant, albeit in another person’s name, for his own benefit and the drugs obtained were, in fact, consumed by him. As such, this conduct constituted merely a purchase of drugs by defendant through the means of a false prescription. In so acting, defendant assumed the role of a buyer and, therefore, he cannot be convicted of a criminal sale. (See People v Lam Lek Chong, 45 NY2d 64, 73; People v Pasquarello, 306 NY 759.)
Turning to the conviction arising out of the events of August 24, 1978, a similar result obtains. Defendant was found guilty of selling quaaludes on that date. Once again, however, the three prescriptions issued by defendant were taken from Raia by the police before any drugs could be purchased, thereby preventing any subsequent sale from ever taking place.
Finally, as to the events of August 30, 1978, there was also a failure of proof that defendant sold guaaludes. Defendant’s conduct on that date merely consisted of writing, at Ryder’s behest, a prescription which was sold to Gory. Although Gory actually obtained the drugs and passed them out to his friends, there was no evidence that defendant, when he issued the prescription, had any knowledge of or interest in that sale taking place. In fact, Ryder testified that he only told defendant that the prescription was for Gory. Defendant, therefore, cannot be held liable as an accomplice to the subsequent sale of the quaaludes by Gory to his friends.
In order to dispel any possible doubts, it should be emphasized that, although not liable as a seller of drugs, a physician who engages in such activities as those undertaken by the defendant in this case is by no means immune from prosecution. In addition to violating numerous provisions of the Public Health Law for which fines and imprisonment *351 may be imposed, a physician who issues prescriptions knowing that they will be used for illicit trafficking in drugs also can be convicted under the Penal Law for the crimes of criminal solicitation, conspiracy and criminal facilitation, to name but a few. As noted earlier, the record of convictions in this case is a testament to that fact.
Defendant’s remaining contentions merit only a brief discussion. Defendant asserts that the trial court erred by failing to charge that Raia, Ryder and another witness, Jane Otto, were accomplices as a matter of law. Although it was agreed in a conference among the trial court, defense counsel and the prosecuting attorney that said witnesses were accomplices as a matter of law, the court charged that their status was to be determined as a question of fact. This was error. However, by not requesting that the jury be instructed that these individuals were accomplices as a matter of law and then failing to object to the charge as given, defendant has not preserved this issue for appellate review. (See CPL 470.05, subd 2.) As noted by the court below, “had a proper exception been taken, or had a request been made, the court, in light of its prior agreement, would have given the appropriate charge. Moreover, at the end of the charge when the trial court had failed to so charge and at a time when the failure could readily have been corrected, counsel did not except or object to the charge as given. Such inaction under the circumstances may not serve to preserve this issue for review.” (78 AD2d 999; cf. People v Le Mieux, 51 NY2d 981.) Similarly, by not objecting to the jury charge on the ground that the Trial Judge had shifted the burden of proof on the question of his criminal intent (see Sandstrom v Montana, 442 US 510), defendant failed to preserve this issue for review (People v Thomas, 50 NY2d 467.)
Accordingly, the order of the Appellate Division should be modified so as to reverse defendant’s convictions for criminal sale of a controlled substance in the third and sixth degrees, the sentences entered there on should be vacated, and those counts of the indictment should be dismissed. As so modified, the order should be affirmed.
*352 Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur.
Order modified in accordance with the opinion herein and, as so modified, affirmed.

. Defendant also asserts that his conduct in writing the illegal prescriptions is “too far removed” from the unlawful sale of any drugs to render him guilty of conspiracy to sell drugs. This contention is without merit. There is sufficient evidence in the record to support the jury’s verdict that defendant agreed to commit the crime of criminal sale of a controlled substance in the third degree. There is, therefore, no reason to disturb defendant’s conviction of conspiracy in the first degree.

. Reliance by the People on such cases as United States v Roya (574 F2d 386, cert den 439 US 857) and United States v Boettjer (569 F2d 1078, cert den 435 US 976) also is misplaced. These cases were decided under the Federal controlled substances act (US Code, tit 21, § 801 et seq.). That statute makes it unlawful to “dispense” a controlled substance (US Code, tit 21, § 841, subd [a], par [1]), and the term “dispense” is expressly defined to include the act of “prescribing” a controlled substance (US Code, tit 21, § 802, subd [10]; see Jin Fuey Moy v United States, 254 US 189). As such, these Federal cases offer no guidance in the interpretation of the word “sell” under the New York Penal Law.

. The Legislature has acted to prohibit one type of abuse in the prescribing of drugs. Section 3304 of the Public Health Law recently has been amended to make it unlawful for “any physician * * * to prescribe, dispense or administer any amphetamines or sympathomimetic amine drug or compound thereof * * * for the exclusive treatment of obesity, weight control or weight loss.” (L 1981, ch 795, eff Sept. 1, 1981.) The amendment expressly provides that its violation “shall not be grounds for prosecution under article two hundred twenty of the penal law.” By subjecting “unscrupulous physicians who continue to prescribe amphetamines indiscriminately” to disciplinary proceedings before the Board of Health, the new law seeks to prevent the widespread abuse of that particular drug. (Executive Memoranda, McKinney’s Session Laws of NY, 1981, Pamphlet No. 6, p A-485.)

. The indictment originally charged defendant with selling 3 grams of the stimulant. However, pursuant to consent by the parties, this count was amended to charge the sale of only 2.4 grams.