THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v KEITH DILLARD, Appellant.

Fourth Department, November 4, 1983

**APPEARANCES OF COUNSEL**

*Edward J. Nowak* (*Howard Broder* of counsel), for appellant.

*Howard R. Relin, District Attorney* (*Michael Nelson* of counsel), for respondent.

**OPINION OF THE COURT**

GREEN, J.

When the People have under their control an informant who has played a major role in a defendant's arrest but fail to call the informant as a witness at trial, the defendant is entitled to have the jurors charged that they may draw an unfavorable inference from this fact, regardless of whether the defendant theoretically had access to

the informant. The trial court's error in refusing to honor defendant's request for such a charge requires that defendant's conviction of criminal sale of a controlled substance in the third degree be reversed and a new trial granted.

On October 5, 1977 an informant employed by the Rochester Police Department telephoned defendant to set up a drug sale. The informant and Alena Floyd, a vice squad agent, then drove to defendant's residence, followed in other cars by narcotics squad investigators, including one Officer Raggi.

Floyd testified that when she arrived on the scene, defendant was seated in a car in front of his residence. Floyd claimed that once the informant told defendant they wanted to buy one gram of cocaine for $80, defendant invited them inside and they went directly into the kitchen. Defendant left the room briefly and returned with a "metal type cigarette case" from which he removed a clear container of white powder. Defendant and the informant "snorted" some of the contents and Floyd gave the defendant $80 in exchange for the container. The powder tested positive for cocaine. The informant never left the kitchen during the entire transaction which lasted approximately 10 minutes. On cross-examination, Floyd conceded that in her police report and Grand Jury testimony she failed to mention either the alleged conversation outside defendant's residence or the snorting of cocaine by defendant and the informant.

Officer Raggi testified that from his vantage point, about 50 yards from defendant's residence, he could see but not hear defendant talking to Floyd and the informant. He could not see what occurred inside the house. Raggi conceded that the informant was a drug addict, had been paid for his services in the past and was given $50 for his efforts in securing defendant's arrest.

The defendant's version of the events in question was markedly different from that presented by the People. Defendant testified that the alleged sale of cocaine never occurred. He stated that the informant "framed" him not only to curry police favor and obtain his fee, but also because the informant held a grudge against defendant from a dispute over a female acquaintance. When Floyd

and the informant arrived, defendant was inside listening to the stereo. The informant asked him if he had any drugs; defendant responded that he did not. Floyd sat with her head down on the kitchen table feigning to be sick during the entire time she was present in defendant's kitchen. Defendant denied owning a metal cigarette box or snorting cocaine with anyone. He did not speak to Floyd at all.

Janis Boneham resided with defendant on October 5, 1977 and was in the living room during the incident in question. She overheard a conversation in the kitchen between defendant and the informant in which defendant denied possessing or selling any drugs. She testified that defendant did not own a metal cigarette box and that she never saw drugs in defendant's house.

Defendant called two character witnesses. The prosecutor asked each one whether they were aware of reports in the community that on August 4, 1977 defendant sold cocaine to Rochester Police Officer Dave Cona in a schoolyard. Both witnesses replied they were unaware of such reports. Nevertheless, in summation the prosecutor recalled "When they were forming their opinion * * * they didn't know about a sale of cocaine to Officer Dave Cona." Defendant's objection was overruled.

Despite defense counsel's request that the court direct the prosecutor to call the informant to testify, or in the alternative, to call him as a court witness, the informant never testified at trial. Defense counsel requested the court to charge the jurors that they could draw an unfavorable inference from this fact. The court denied this request reasoning that the informant was not under the prosecutor's control and the defendant had equal access to the informant and could have called him as a witness.

In its charge, the court stated that "a person is presumed to have intended the natural and necessary consequences of his acts."

On this appeal defendant contends that he is entitled to a new trial because of the trial court's failure to give the unfavorable inference charge, its failure to strike the prejudicial comments of the prosecutor in summation, and its charge on intent.

The failure to produce a trial witness, standing alone, is insufficient to justify an unfavorable inference charge. Rather, the witness must be one whom the party would naturally be expected to call. To satisfy this requirement, the witness must be one who is subject to a subpoena and his testimony must be important and favorable, not merely cumulative or trivial. "If the witness may naturally be inferred to be favorable to a party, and the testimony of the witness would be important, the burden is upon that party to account for the witness' absence in order to escape the possibility of an unfavorable inference." (Richardson, Evidence [Prince, 10th ed], § 92, p 66.) If such a witness is not called, a defendant is entitled to an instruction that the jury may draw an unfavorable inference from this fact (*People v Valerius,* 31 NY2d 51, 55; *People v Alamo,* 63 AD2d 6; *People v Douglas,* 54 AD2d 515).

In the case at bar, the People claim that the informant was not under their control. We disagree. Control is a relative concept. The People have control of a witness when the witness is an informant under indictment (*People v Taylor,* 98 Misc 2d 163, 165), even though the prosecution is uncertain about the exact whereabouts of the informant (*People v Alamo, supra,* p 8) and when the witness, although not employed by the prosecution, is at least under their influence (*People v Douglas, supra,* p 516).

*People v Watkins* (67 AD2d 717) is distinguishable. There, the informant was not present when the alleged sale occurred. Defendant neither requested that the informant be produced, nor questioned the prosecutor about his ability to locate the informant. The Appellate Division, Second Department, held that "there is no proof in the record that the informer was under the control of the prosecution at the time of trial, and such control may not be inferred merely from the fact that he was a police informant at the time of the commission of the crime" (*People v Watkins, supra,* p 718). In the case at bar the record is significantly different. Here, the informant was present throughout the entire transaction leading to defendant's arrest. Defendant specifically requested that the informant be called as a witness or at least be present in the courtroom. Moreover, the prosecutor represented to the

court that he "knew where the informant is and how to reach him. If the court is to order us to either produce him or advise (defense counsel) of his whereabouts we will do so." Here, not only did the prosecution know where the informant was, but knew as well that he had worked for the police for over a year, had been paid regularly for his services, and had provided an affidavit in support of a search warrant for defendant's residence.

Generally, if a witness is equally available to both parties, no unfavorable inference may be drawn from the failure of either party to call the witness (see *People v Elbroch,* 250 App Div 583). This principle usually applies where the witness is a stranger to both parties. But when the witness is a paid informant and, although theoretically accessible to both sides, is favorable to the prosecution and hostile to the defense, the principle is clearly inapt (Richardson, Evidence [Prince, 10th ed], § 92, p 66; McCormick, Evidence [2d ed], § 272, p 657; see *People v Rodriguez,* 38 NY2d 95, 98; *People v Brown,* 34 NY2d 658, 660; *People v Taylor, supra,* p 167). The informant in the case at bar could not have been more hostile to the defendant. He arranged the alleged sale of cocaine, was present throughout the entire transaction, and was paid a fee for his services. Moreover, defendant claimed the informant framed him because he held a grudge over a mutual female acquaintance. The People's contention that the informant could just as easily have been summoned by the defendant as by the prosecution, not only is belied by the record but also would result in the unfavorable inference rule almost never being applied in a criminal case. As the Third Department recognized in *People v Moore* (17 AD2d 57, 60-61, cert den 371 US 838), if the rule of equal availability "were automatically applied in the sense that the witness could have been physically subpoenaed by a defendant as well as by the People, and thus equally 'available', it could almost never be applied in a criminal case * * * And it is at least doubtful, that as between a defendant in a criminal case, presumed to be innocent and required to call no witness, and the People, who have the burden of proof beyond a reasonable doubt, the rule of equal availability of witnesses to the commission of a crime has any sensible application."

The precise nature of the unfavorable inference which may be drawn is unclear. Some courts have held that the jury may infer that had the witness been called his testimony would have been unfavorable (see *People v Valerius, supra*). Other courts have held that the jury may not speculate as to what the witness would have said had he been called and should only consider the evidence already presented most strongly against the party who could have called the witness to controvert it (see *Milio v Railway Motor Trucking Co.*, 257 App Div 640; cf. *Group v Szenher,* 260 App Div 308, affd 284 NY 741). The Court of Appeals in a civil case stated the rule as follows: "[W]here an adversary withholds evidence in his possession or control that would be likely to support his version of the case, the strongest inferences may be drawn against him which the opposing evidence in the record permits" (*Noce v Kaufman,* 2 NY2d 347, 353).

In the case at bar, defendant was entitled to an unfavorable inference charge and the court's error in failing to so charge was not harmless. Both defendant and Ms. Boneham denied the sale occurred. The only prosecution eyewitness to testify otherwise was Officer Floyd, who defendant claimed was seated with her face down throughout the alleged transaction. Since the proof against defendant was not overwhelming, had the unfavorable inference charge been given there is a significant probability that a contrary verdict may have resulted (see *People v Crimmins,* 38 NY2d 407, 411-412).

█ In view of our disposition, we need not dwell upon defendant's remaining contentions.[*] We cannot overlook however, the prosecutor's clearly improper summation ref-

---

[*] One such contention is that the prosecutor's failure to call the informant as a witness violated defendant's due process right to a fair trial. He cites no authority for this position and we know of no instance in which a court has dictated to a prosecutor whom he shall call as a witness (see *People v Sapia,* 41 NY2d 160, 163, cert den 434 US 823). We note that the rule in the Second Circuit is that the Government is not the guarantor of its informer's presence at trial (see *United States v Russ,* 362 F2d 843, 844, cert den 385 US 923) and does not have a duty to produce him (see *United States v Cimino,* 321 F2d 509, 512, cert den *sub nom. D'Ercole v United States,* 375 US 967; *United States v Prada,* 451 F2d 1319, 1320-1321; *United States v Ortega,* 471 F2d 1350, 1358-1359, n 2, cert den 411 US 948; but see *United States v Rosario,* 327 F2d 561, 564 ["Indeed, there may be cases where the government would be under a duty to produce the informer, if it is able to do so"]). All that the defendant is entitled to under the Federal rule is the informer's name, such information as the Government may have concerning his whereabouts, and reasonable co-operation in securing his appearance (see *United States v D'Angiolillo,* 340 F2d 453, 455, cert den 380 US 955).

erence to defendant's alleged involvement in a drug transaction not in evidence. Cross-examination of a character witness must be confined to knowledge of the defendant's reputation and must not extend to personal knowledge of underlying acts (*People v Kennedy,* 47 NY2d 196, 200). Here, the prosecutor overstepped this boundary by stating to the jury that the character witnesses were unworthy of belief on the question of defendant's reputation because they lacked personal knowledge of alleged events similar to the crime of which defendant was charged (see *People v Wright,* 41 NY2d 172; *People v Ashwal,* 39 NY2d 105; *People v Mott,* 94 AD2d 415).

Defendant's argument that the trial court improperly shifted the burden of proof on the question of his criminal intent (see *Sandstrom v Montana,* 442 US 510) was not preserved for review (*People v Lipton,* 54 NY2d 340, 351).

Accordingly, the judgment of conviction should be reversed and a new trial granted.

DILLON, P. J., CALLAHAN, O'DONNELL and SCHNEPP, JJ., concur.

Judgment unanimously reversed, on the law, and new trial granted.